LAMONT EDWARD HORTON
NAME

BV7277
PRISON IDENTIFICATION/BOOKING NO.

44750 60TH STREET WEST
ADDRESS OR PLACE OF CONFINEMENT

LANCASTER, CA. 93536

Note: It is your responsibility to notify the Clerk of Court in writing of any change of address. If represented by an attorney, provide his or her name, address, telephone and facsimile numbers, and e-mail address.



FILED
CLERK, U.S. DISTRICT COURT

FEB 1 8 2025

CENTRAL DISTRICT OF CALIFORNIA
BY MDV          DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

LAMONT EDWARD HORTON

FULL NAME (Include name under which you were convicted )

Petitioner,

v.

E. LUNDY
NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER

Respondent.

CASE NUMBER:

CV 2:25-CV-01408-MWC-E
To be supplied by the Clerk of the United States District Court

☐ _____ AMENDED

## PETITION FOR WRIT OF HABEAS CORPUS
## BY A PERSON IN STATE CUSTODY
## 28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION LOS ANGELES COUNTY
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(List by case number )
CV _____
CV _____

## INSTRUCTIONS - PLEASE READ CAREFULLY

1.   To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.   In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge judgments entered by more than one California state court, you must file a separate petition for each court.

3.   Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.   Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.   You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. You must also state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

6.   You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

7.   When you have completed the form, send the original and two copies to the following address:

Clerk of the United States District Court for the Central District of California
United States Courthouse
ATTN: Intake/Docket Section
255 East Temple Street, Suite TS-134
Los Angeles, California 90012

PLEASE COMPLETE THE FOLLOWING (*check appropriate number*):

This petition concerns:
1. ☒ a conviction and/or sentence.
2. ☐ prison discipline.
3. ☐ a parole problem.
4. ☐ other.

## PETITION

1. Venue
   a. Place of detention  CALIFORNIA STATE PRISON—LOS ANGELES COUNTY
   b. Place of conviction and sentence  LOS ANGELES, CALIFORNIA

2. Conviction on which the petition is based (*a separate petition must be filed for each conviction being attacked*).
   a. Nature of offenses involved (*include all counts*):  FIRST DEGREE MURDER, USE OF A DEADLY OR DANGEROUS WEAPON

   b. Penal or other code section or sections:  PC § 187 (A), PC § 12022 (b)(1)

   c. Case number:  SA106976
   d. Date of conviction:  MAY 12, 2023
   e. Date of sentence:  JULY 27, 2023
   f. Length of sentence on each count:  COUNT (1) 75 YEARS TO LIFE, COUNT (2) 1 YEAR
   g. Plea (*check one*):
      ☒ Not guilty
      ☐ Guilty
      ☐ Nolo contendere
   h. Kind of trial (*check one*):
      ☒ Jury
      ☐ Judge only

3. Did you appeal to the California Court of Appeal from the judgment of conviction?     ☒ Yes  ☐ No
   If so, give the following information for your appeal (*and attach a copy of the Court of Appeal decision if available*):
   a. Case number:  B332643
   b. Grounds raised (*list each*):
      (1) TRIAL COURT ERRED IN DENYING MOTION FOR MISTRIAL BASED ON JUROR
      (2) MISCONDUCT

   (3) _____

   (4) _____

   (5) _____

   (6) _____

c.  Date of decision: October 17, 2024

d.  Result JUDGEMENT AFFIRMED

_____

4.  If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision? ☑Yes ☐No

If so, give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

a.  Case number: S288035

b.  Grounds raised *(list each)*:

   (1) PETITIONER'S 6TH AMENDMENT RIGHTS WERE VIOLATED BY COURT'S DENIAL FOR

   (2) MISTRIAL AFTER JUROR COMMITED MISCONDUCT

   (3) PETITIONERS 14TH AMENDMENT RIGHTS WERE VIOLATED BY COURT'S DENIAL FOR

   (4) MISTRIAL AFTER JUROR COMMITTED MISCONDUCT

   (5) _____

   (6) _____

c.  Date of decision: DECEMBER 31, 2024

d.  Result PETITION FOR REVIEW DENIED

_____

5.  If you did not appeal:

a.  State your reasons _____

_____

_____

_____

_____

b.  Did you seek permission to file a late appeal? ☐Yes ☐No

6.  Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?

☐ Yes ☑ No

If so, give the following information for each such petition *(use additional pages, if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.  (1) Name of court: _____

   (2) Case number: _____

   (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

    (a) _____

    (b) _____

    (c) _____

    (d) _____

    (e) _____

    (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?     ☐ Yes   ☐ No

b.  (1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

        (a) _____

        (b) _____

        (c) _____

        (d) _____

        (e) _____

        (f) _____

    (5) Date of decision: _____

    (6) Result _____

_____

    (7) Was an evidentiary hearing held?     ☐ Yes   ☐ No

c.  (1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

        (a) _____

        (b) _____

        (c) _____

        (d) _____

        (e) _____

        (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?        ☐ Yes ☐ No

7.  Did you file a petition for certiorari in the United States Supreme Court?        ☐ Yes    ☒ No

    If yes, answer the following:

    (1) Docket or case number (if you know): _____

    (2) Result: _____

_____

    (3) Date of result (if you know): _____

    (4) Citation to the case (if you know): _____

8.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the underlined facts supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

    **CAUTION:**    *Exhaustion Requirement:* In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court. This means that, prior to seeking relief from the federal court, you first must present all of your grounds to the California Supreme Court.

    a.  Ground one: PETITIONER'S 6TH/14TH CONSTITUTIONAL RIGHTS WERE VIOLATED BY TRIAL COURT'S DENIAL OF MOTION FOR MISTRIAL AFTER JUROR COMMITTED MISCONDUCT

    (1) Supporting FACTS: TRIAL COURT DID NOT ADEQUATELY ADDRESS JUROR MISCONDUCT. RECORD AFFIRMATIVELY SHOWED (2) JURORS WERE OUTSIDE THE PRESENCE OF THE REMAINING (10) JURORS DURING DELIBERATIONS IN THE HALLWAY. JUROR #9 "DID NOT WANT TO DO THIS ANYMORE" ASKED IF "SHE WAS BEING HELD HOSTAGE" ASKED "IF SHE WAS GOING TO JAIL" TRIAL JUDGE BURGHARDT DID NOT INFORM ANY PARTIES

    (2) Did you raise this claim on direct appeal to the California Court of Appeal?        ☒ Yes  ☐ No

    (3) Did you raise this claim in a Petition for Review to the California Supreme Court?        ☒ Yes  ☐ No

    (4) Did you raise this claim in a habeas petition to the California Supreme Court?        ☒ Yes  ☐ No

    b.  Ground two: JUDGE BURGHARDT FAILED TO INFORM PARTIES ABOUT JUROR #9's CONDUCT

    (1) Supporting FACTS: DEPUTY KUSAK SPOKE WITH JUDGE BURGHARDT ABOUT WHAT HAPPENED AND THERE WERE NO ALTERNATE JURORS LEFT. JUDGE EXCUSED THE JURORS AND DID NOT INFORM ANYONE

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?        ☐ Yes      ☑ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes      ☑ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?       ☐ Yes      ☑ No

c.   Ground three: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?        ☐ Yes      ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes      ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?       ☐ Yes      ☐ No

d.   Ground four: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?        ☐ Yes      ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes      ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?       ☐ Yes      ☐ No

e.   Ground five: _____

_____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?        ☐ Yes      ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

9.  If any of the grounds listed in paragraph 8 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: JUDGE BURGHARDT'S FAILURE TO INFORM PARTIES ABOUT THE PROBLEMATIC JUROR AND POSSIBLE MISCONDUCT, REASON BEING JUDGE BURGHARDT WAS NOT AVAILABLE THE NEXT DAY, COUNSEL WAS UNAWARE, AND BELIEVED THIS WAS PART OF MISTRIAL MOTION

10. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐ Yes    ☒ No

If so, give the following information for each such petition *(use additional pages, if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.   (1) Name of court: _____

     (2) Case number: _____

     (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

     (4) Grounds raised *(list each)*:

          (a) _____

          (b) _____

          (c) _____

          (d) _____

          (e) _____

          (f) _____

     (5) Date of decision: _____

     (6) Result _____

     _____

     (7) Was an evidentiary hearing held?    ☐ Yes ☐ No

b.   (1) Name of court: _____

     (2) Case number: _____

     (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

     (4) Grounds raised *(list each)*:

          (a) _____

          (b) _____

          (c) _____

          (d) _____

          (e) _____

          (f) _____

     (5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?      ☐ Yes ☐ No

11. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to this judgment of conviction?      ☐ Yes  ☒ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

12. Are you presently represented by counsel?      ☐ Yes  ☒ No

If so, provide name, address and telephone number: _____

_____

_____

WHEREFORE, petitioner prays that the Court grant petitioner all relief to which he may be entitled in this proceeding.

_____

*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on  2 / 12 / 2025        _____

                *Date*                                       *Signature of Petitioner*

Filed 10/17/24

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

COURT OF APPEAL – SECOND DIST.

**FILED**

Oct 17, 2024

EVA McCLINTOCK, Clerk

C.Meza          Deputy Clerk

| | |
|---|---|
| THE PEOPLE, | B332643 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. SA106976) |
| LAMONT EDWARD HORTON, | |
| Defendant and Appellant. | |

Document received by the CA Supreme Court.

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph J. Burghardt, Judge. Affirmed.

Judith Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

———————

Lamont Edward Horton appeals from his jury conviction of first degree murder (Pen. Code, § 187, subd. (a)),[1] contending the trial court erred in denying his motion for a mistrial based on juror misconduct.  He contends there was good cause under section 1089 to discharge one of the jurors for "refusing to deliberate."  Although the record shows the juror got sick and left the jury room during deliberations, it does not show a demonstrable reality that the juror refused to deliberate.  On the contrary, deliberations simply paused and resumed the next day without incident.  Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A.   *Charges, Conviction, and Sentencing*

On August 11, 2022, around 10:30 a.m., Tre Matthis heard two loud voices coming from the apartment below his: one male voice and the other female.  The male voice yelled angrily, and the female voice screamed for help.  Matthis immediately went to the leasing office at the apartment building and told the front desk attendant someone needed to investigate what was going on in the unit.

Joel Vierra, the building manager, went to the apartment below Matthis's apartment.  Tiffany Hall lived there and was married to Horton.  Vierra knocked on the door and heard the deadbolt close, but no one answered.  Minutes later, while Vierra

---

[1]     All undesignated statutory references are to the Penal Code.

[2]     Because the only issue before us on appeal relates to juror misconduct, we provide an abbreviated summary of the evidence underlying Horton's conviction.

Document received by the CA Supreme Court.

was still standing outside Hall's front door, he saw a thin, African American man walking toward him with his head down and wearing a hat, tennis shoes, and shorts with tights underneath. Vierra yelled, " 'Hey, stop,' " but the man turned around and ran toward an exit.

Around 10:50 a.m., Officer Matthew Cordova of the Santa Monica Police Department (SMPD) heard a radio call regarding the incident and drove towards Hall's apartment building. As Cordova neared the building, he saw Horton, who matched the description of the suspect on the radio call, running along the sidewalk. Cordova pursued Horton and eventually placed him in handcuffs. Horton had blood on his cheek, hand, and sneaker.

SMPD officers searched Hall's apartment and found large pools of blood in the kitchen and living room. There was a bloody knife in the kitchen sink, and Hall's body was stuffed inside a small suitcase. It was later determined Hall died of multiple stab wounds. A DNA analysis showed the blood on Hall and the knife contained Horton's DNA. The blood on Horton contained Hall's DNA.

The Los Angeles County District Attorney charged Horton in an information with murder (§ 187, subd. (a)) and alleged that Horton personally used a deadly or dangerous weapon in committing the murder (§ 12022, subd. (b)(1)). The People additionally alleged that Horton had two prior "strike" convictions (§§ 667, subds. (b)-(j); 1170.12, subd. (b)).

The trial began in May 2023. Horton testified that on the day of the murder, he got into an argument with Hall. During the argument, he "blacked out," and then at some point, he regained consciousness, saw a lot of blood, and ran out of the apartment. Horton admitted, "I believe I'm the reason why [Hall]

Document received by the CA Supreme Court.

is not here. I believe I'm the cause of her death." However, Horton testified he did not remember how Hall died.

After two days of deliberations, the jury convicted Horton of first degree murder and found the knife enhancement true. Horton waived his right to a jury trial on the allegations that he had two prior strike convictions, and after a court trial the court found them to be true. The court sentenced Horton to 76 years to life in state prison, consisting of 75 years to life for the murder under the Three Strikes law and one year for the knife enhancement. Horton timely appealed.

B.    *Relevant Jury Deliberations and Post-trial Motion*

At some point during the evidentiary portion of the trial, when there was one alternate juror left, Juror No. 9 asked the judicial assistant, " 'What happens if we lose all the alternates?' " The judicial assistant responded, " 'That's not going to happen before we finish.' " Juror No. 9 then asked, " 'When are we going to finish?,' " to which the judicial assistant responded, " 'You need to talk to the judge.' " Judge Joseph Burghardt answered Juror No. 9's questions in front of the entire juror panel.

On May 11, 2023, before closing arguments began, Juror No. 9 called the judicial assistant to say she was running late because she "had an emergency with [her] dog." Judge Burghardt took a recess to wait for Juror No. 9 to arrive. Once Juror No. 9 arrived at approximately 10:30 a.m., both sides gave closing arguments.

Around 12:00 p.m., Juror No. 9 asked Deputy Kusak, " 'Where is the trial going to take place?,' " and " 'Is it normal for jurors to be dropping out during the trial?' " Kusak told her to ask her questions after the lunch break. After the lunch break, Juror No. 9 did not ask any questions. The People gave their

Document received by the CA Supreme Court.

rebuttal argument followed by the court's final instructions. Around 2:00 p.m., the jury began its deliberations.

About an hour later, one of the jurors called the judicial assistant and said that one of the female jurors was sick. The judicial assistant told Kusak about the situation. Kusak approached the room where the jurors were deliberating and saw two jurors, including Juror No. 9, outside in the hallway. Juror No. 9 was sitting on the floor and said, " 'I just threw up.' " When Kusak asked if he should call the paramedics or if she had a medical condition, Juror No. 9 said repeatedly, " 'No, I just don't want to be here anymore.' " Juror No. 9 repeatedly asked, " 'Am I going to jail?' " The bailiff told her, " 'This has nothing to do with jail. I just want to make sure you're okay.' " Juror No. 9 said, " 'Am I being held hostage right now?' " She repeatedly said, " 'I want to go home, and I don't want to do this.' " Kusak responded, " 'As of right now, you cannot go home.' "

Kusak left Juror No. 9 in the hallway with the second juror who was trying to calm her down. Kusak spoke to Judge Burghardt about what happened. At this point, there were no alternate jurors left. Based on Judge Burghardt's instructions, the deputies obtained contact information from the jurors and excused them for the day, with instructions for all of them (including Juror No. 9) to call the court the next morning and on a daily basis until Juror No. 9 was able to come back to court and finish the deliberations. All the jurors left at around 3:30 p.m. Judge Burghardt did not inform either party about the situation.[3]

_____

[3]    On appeal, Horton does not challenge Judge Burghardt's decision not to inform the parties about Juror No. 9's conduct.

Document received by the CA Supreme Court.

The next morning, May 12, Juror No. 9 called the judicial assistant and said she was able to return to court. She came to court, and the jury resumed its deliberations around 10:49 a.m.

At approximately 2:45 p.m., the jury sent the court a note requesting a copy of the closing arguments. Judge Lauren Birnstein was covering for Judge Burghardt for the afternoon. In discussing how to respond to the jury question, Judge Birnstein commented, "One of the jurors is very, very problematic and does not want to be around." (Judge Birnstein later indicated Judge Burghardt had advised her this was the case.) Around 3:39 p.m., the jury indicated it had reached a verdict.

Before Judge Birnstein called the jury into the courtroom for the verdict to be read, defense counsel requested "to put some things on the record." Counsel stated, "I learned some information about Juror No. 9 and some of the issues that [were] going on around with her. I believe . . . she was found outside of the jury room, the original jury room." Judge Birnstein subsequently questioned the court deputies, the judicial assistant, and the attorneys for both sides about the facts concerning Juror No. 9.[4]

After the investigation, Judge Birnstein found there was no evidence the jury deliberations contained "anything strange" or "anything wrong whatsoever." The court stated, "[O]ne would assume that if there were problems during deliberations, the jury would have sent a note. . . . Any one of those jurors could have sent a note if there was anything strange going on during the

---

[4]    The facts included above are derived from Judge Birnstein's investigation.

Document received by the CA Supreme Court.

deliberations."  The court proposed taking the verdict and holding the jury in the courtroom for additional questioning.

Defense counsel objected to Judge Birnstein taking the verdict and made an oral motion for a mistrial based on "juror misconduct."  Defense counsel argued, "I think that [the jurors] were not all together at the same time.  There were two jurors that were outside.  We don't know whether the other jurors continued to deliberate or not.  It's just not clean.  [¶]  And I was just not notified of this at all. . . .  I knew that this juror was particularly problematic.  But I was hoping that she would be more in line and follow the directions and orders of the court.  [¶] It doesn't seem that she has, and so I think that that taints the entire process and the sanctity of what is required for Mr. Horton in terms of due process and a fair trial."

Judge Birnstein denied the mistrial motion.[5]  Before bringing the jurors back into the courtroom, the judge invited the parties to propose additional questions to ask the jurors.  Defense counsel proposed questions and did not object to the court's final questions.

After the verdict was read, Judge Birnstein addressed the jurors and stated, "So it's my understanding that one of the jurors fell ill during the course of the deliberations, and that the juror was observed to be outside of the deliberation room in the hallway – in the back hallway here.  And there was another juror who was caring for her at that time.  [¶]  So my first question . . . is: Did any deliberations whatsoever, meaning talking about the case or the facts, the evidence, the law – did any of that go on

---

[5]    Horton does not challenge Judge Birnstein's decision to rule on the motion for a mistrial in Judge Burghardt's place.

Document received by the CA Supreme Court.

while the two jurors were outside or any juror was outside of the deliberating room?"  Each juror answered, "No," except for Juror No. 9 who said, "I wasn't in the room."

Judge Birnstein then asked the jurors, "Do you believe that all of the jurors followed the instructions of the law as given to you by Judge Burghardt? . . . [¶] Your proceedings, your procedure, all of that, do you think all the jurors followed the law that he gave you?"  The foreperson answered, "Yes," and all the other jurors agreed.  Thereafter, Judge Birnstein excused the jurors from further service.

Once the jurors left the courtroom, defense counsel stated, "I would point out that [Juror No.] 12 lied when he said that there were no deliberations inside the room.  There's no way he would have known that when he was outside in the hallway helping [Juror No.] 9."  Judge Birnstein replied, "But . . . all the other jurors answered that no deliberations took place."[6]

## DISCUSSION

Horton argues the trial court erred in denying his motion for a mistrial based on the trial court's refusal to dismiss Juror

---

[6]    Later, defense counsel filed a petition to release juror information under Code of Civil Procedure section 237.  Judge Burghardt denied the motion, concluding the defense did not make a prima facie showing of good cause under the statute.  In denying the motion, Judge Burghart stated, "[I]t was pretty clear that Juror No. 9 did not want to be there, did not want to be a juror," but there was no "evidence that there was any misconduct in the deliberation process" or that "she refused to deliberate."  Because Horton appeals only Judge Birnstein's denial of the mistrial motion, Judge Burghardt's order is not relevant to our analysis.

Document received by the CA Supreme Court.

No. 9.  Horton claims there was " 'good cause' " under section 1098 to dismiss Juror No. 9 because she "refused to deliberate."

We review the denial of a mistrial motion under the deferential abuse of discretion standard.  (*People v. Ramirez* (2006) 39 Cal.4th 398, 462; *People v. Silva* (2001) 25 Cal.4th 345, 372.)  " 'A trial court should grant a mistrial only when a party's chances of receiving a fair trial have been irreparably damaged' " (*Ramirez*, at p. 462), i.e., where " 'the court is apprised of prejudice that it judges incurable by admonition or instruction' " (*People v. Suarez* (2020) 10 Cal.5th 116, 148).

The trial court did not abuse its discretion in finding there was no juror misconduct under section 1089, and thus the court did not abuse its discretion in denying the motion for a mistrial.  (See *People v. Harris* (2013) 57 Cal.4th 804, 857 [finding no abuse of discretion in denying defendant's motion for mistrial in the absence of proof of prejudicial juror misconduct].)

A.    *Section 1089*

"[S]ection 1089 ' "authorizes the trial court to discharge a juror at any time before or after the final submission of the case to the jury if, upon good cause, the juror is 'found to be unable to perform his or her duty.' " ' "  (*People v. Rangel* (2016) 62 Cal.4th 1192, 1211; see § 1089.)  "The most common application of [section 1089] permits the removal of a juror who becomes physically or emotionally unable to continue to serve as a juror due to illness or other circumstances."  (*People v. Cleveland* (2001) 25 Cal.4th 466, 485; see *People v. Jones* (2020) 50 Cal.App.5th 694, 700 (*Jones*) ["Dismissal may be appropriate [under section 1089] when a juror is emotionally unable to continue" with deliberations].)  Section 1089 has also "been applied to permit the removal of a juror who refuses to deliberate,

Document received by the CA Supreme Court.

on the theory that such a juror is 'unable to perform his duty' within the meaning of [] section 1089." (*Cleveland*, at p. 475; see *People v. Alexander* (2010) 49 Cal.4th 846, 926 ["The court properly may dismiss a juror based on the juror's "unwillingness to engage in the deliberative process."].)

"'The trial court's authority to discharge a juror includes the authority to conduct an appropriate investigation concerning whether there is good cause to do so.'" (*People v. Alexander*, *supra*, 49 Cal.4th at p. 926; see *People v. Beeler* (1995) 9 Cal.4th 953, 989, overruled on other grounds in *People v. Pearson* (2013) 56 Cal.4th 393, 462 ["The court's discretion in deciding whether to discharge a juror encompasses the discretion to decide what specific procedures to employ including whether to conduct a hearing or detailed inquiry."].) "'Great caution is required when deciding to excuse a sitting juror.'" (*Jones, supra*, 50 Cal.App.5th at pp. 700-701, quoting *People v. Allen and Johnson* (2011) 53 Cal.4th 60, 71.) "[T]o ensure the sanctity and secrecy of the deliberative process, a trial court's inquiry into grounds for discharging a deliberating juror should be as limited as possible, and should cease once the court is satisfied that the juror in question 'is participating in deliberations and has not expressed an intention to disregard the court's instructions or otherwise committed misconduct, and that no other proper ground for discharge exists.'" (*People v. Manibusan* (2013) 58 Cal.4th 40, 53.) A court may not resolve ambiguity as to a juror's state of mind by "presuming the worst" of a juror. (*Jones*, at p. 702; accord, *Shanks v. Department of Transportation* (2017) 9 Cal.App.5th 543, 553.)

"'Before an appellate court will find error in failing to excuse a seated juror, the juror's inability to perform a juror's

Document received by the CA Supreme Court.

functions must be shown by the record to be a "demonstrable reality." The court . . . will uphold the trial court's exercise of discretion on whether a seated juror should be discharged for good cause under section 1089 if supported by substantial evidence.' " (*People v. Jablonski* (2006) 37 Cal.4th 774, 807; see *People v. Rangel, supra*, 62 Cal.4th at p. 1211 [" ' "[W]hen a trial court's denial of a motion to discharge a juror is supported by substantial evidence, it will be upheld." ' "].)

B.    *The Trial Court Did Not Err in Denying Horton's Motion for a Mistrial*

The record does not show a "demonstrable reality" that Juror No. 9 was unable or unwilling to perform her duties. (*People v. Jablonski, supra*, 37 Cal.4th at p. 807.) Judge Birnstein conducted a sufficient investigation into possible juror misconduct, examining court staff, bailiffs, and attorneys who interacted with Juror No. 9 or overheard her interactions with others. The investigation revealed that during the evidentiary portion of the trial and during breaks between closing arguments, Juror No. 9 asked the judicial assistant and bailiff several questions about trial procedures, such as " 'When are we going to finish?,' " and " 'Is it normal for jurors to be dropping out during the trial?' " Juror No. 9 also professed to have an emergency with her dog that caused her to be late on the day of closing arguments. The court appropriately determined none of that conduct constituted misconduct.

The investigation also showed that an hour after deliberations began, Juror No. 9 left the jury room and sat in the hallway. She said, " 'I just threw up,' " " 'I just don't want to be here anymore,' " and " 'I want to go home.' " At that point, Judge Burghardt excused all the jurors for the remainder of the

*Document received by the CA Supreme Court.*

afternoon.  The next morning, Juror No. 9 returned to court and deliberated for several hours before reaching a verdict.  When questioned, the jurors agreed that deliberations paused when Juror No. 9 left the jury room, and they followed the law at all times.  Judge Birnstein did not abuse her discretion in finding no misconduct as a result of Juror No. 9 leaving the room.[7]

"By statute, illness is cause to dismiss a juror."  (*People v. Duff* (2014) 58 Cal.4th 527, 560.)  However, "[w]hether a juror's illness can best be accommodated by a continuance or replacement with an alternate is a matter committed to the trial court's discretion."  (*Id.* at p. 561.)  The court's decision to continue the case to the next morning was not an abuse of discretion.  Juror No. 9 became sick when the evidentiary portion of the trial ended, and the jury started deliberating.  Because the presentation of evidence had concluded, a brief continuance to the

---

[7]    Although Horton's brief contains a heading stating, "The judgment should be reversed for juror misconduct because Juror No. 9 refused to deliberate *and deliberations were undertaken in her absence*" (italics added; capitalization omitted), Horton provides no evidence or argument that deliberations took place when Juror No. 9 was outside the jury room.  He has forfeited the contention on appeal.  (See *Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1458 [" 'Mere suggestions of error without supporting argument or authority . . . do not properly present grounds for appellate review.' "]; accord, *In re S.C.* (2006) 138 Cal.App.4th 396, 408.)  Horton also suggests in passing that Juror No. 9's questions and repeated statements that she wanted "to go home" after becoming ill suggest she "may have encouraged the jury to convict so she could . . . 'go home.' "  This speculative argument lacks any factual or legal support and is likewise forfeited.  (See *In re S.C.*, at p. 408.)

Document received by the CA Supreme Court.

next morning did not impair either party, and Horton does not contend otherwise. (Cf. *ibid*. [court did not abuse discretion in excusing ill juror who would likely be out for two days because a two-day continuance "would result in a lengthy gap between presentation of evidence and closing arguments on one or both sides, a gap that might impair either party's presentations or impact juror deliberations"].) More importantly, the record shows that the brief continuance resolved any doubt about Juror No. 9's capabilities as a juror. Juror No. 9 returned the next day and deliberated without any further complications.

Horton argues the record shows as a " 'demonstrable reality' " that Juror No. 9 was "refusing to deliberate" when she sat in the hallway and said she did not want to be there anymore. We reject the argument. "Even the most diligent juror may reach the end of his attention span at some point during a trial." (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 418, overruled on other grounds in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.) In *People v. Henderson* (2022) 78 Cal.App.5th 530, the appellate court held the trial court erred by " 'presuming the worst' " of a juror and discharging him under section 1089 when "[a]t best, the evidence established that [the juror] was looking forward to his jury duty being over, a sentiment that does not strike us unusual for jurors in a lengthy trial, especially when trying to juggle work and perform their civic duty at the same time." (*Henderson*, at pp. 562-563.) The court held that "[s]uch a feeling did not signal that the juror could not perform his duty." (*Id.* at p. 563.)

*Jones, supra,* 50 Cal.App.5th 694 is also instructive. In *Jones*, after the jury began deliberating, Juror No. 10 left the jury room and told the courtroom clerk that another juror revealed

Document received by the CA Supreme Court.

extraneous information during deliberations about the defendant's prior criminal history. (*Id*. at p. 689.) Juror No. 10 felt " 'extremely upset' " and " 'somewhat coerced' " by the event because the other juror revealed the information after Juror No. 10 had expressed reservations about the charges. (*Id*. at p. 701.) The trial court asked Juror No. 10 if " 'it would be very difficult for you to continue in your deliberations,' " to which Juror No. 10 replied, "Yes." (*Ibid*.) Finding that Juror No. 10 had expressed " 'an inability to continue deliberating,' " the trial court dismissed Juror No. 10. (*Id*. at p. 699.)

Our colleagues in *Jones* concluded the record did not show, as a demonstrable reality, that Juror No. 10 was unwilling to continue deliberating. (*Jones*, *supra*, 50 Cal.App.5th at pp. 704-705.) "Juror No. 10 never requested to be discharged, nor did she ever say she was unwilling or unable to continue deliberating." (*Id*. at p. 701.) Also, the trial court "never asked [Juror No. 10] directly whether she could continue." (*Id*. at p. 702.) Rather, the court asked her if it would be " 'very difficult' " for her to continue, which invited an "equivocal" response—"Juror No. 10 could have meant she was incapable of continuing to deliberate, or she could have meant she was capable of continuing to deliberate but it would be hard to do so." (*Ibid*.) When a juror's answer is ambivalent, the court is " 'not entitled to . . . presum[e] the worst.' " (*Ibid*.)

Like the juror in *Jones*, here, Juror No. 9 never requested to be discharged, nor did she ever say she was unwilling to continue deliberating altogether. Rather, she expressed not wanting to be there and wanting to go home at that point in time. She had deliberated without incident for an hour before she took ill. And even if Juror No. 9's conduct in the hallway could have

been interpreted as an expression of her refusal to continue to deliberate, that possibility was quickly dispelled the next morning when Juror No. 9 returned to court and resumed deliberating. (See *People v. Goldberg* (1984) 161 Cal.App.3d 170, 191-192 [no abuse of discretion in keeping juror where juror became extremely upset and asked to be excused, but after discussing the issue with the judge, juror agreed to continue deliberating].)

In sum, the record does not indicate that Juror No. 9 refused to deliberate or was unable to perform her duty as a juror. The trial court did not abuse its discretion in finding there was "nothing . . . wrong whatsoever" with the jury deliberations. Because there was no juror misconduct, it follows that the record is absent of any "incurably prejudicial" incident that would justify granting a mistrial motion. (*People v. Suarez*, *supra*, 10 Cal.5th at p. 148.) Thus, we conclude the trial court did not abuse of discretion in denying the mistrial motion.[8]

## DISPOSITION

The judgment is affirmed.

STONE, J.

We concur:

MARTINEZ, P. J.

SEGAL, J.

---

[8]     To the extent Horton contends the court's failure to discharge Juror No. 9 violated his state and federal constitutional rights, we reject the claim. The "conclusion that the trial court did not violate [section 1089] necessarily disposes of [a defendant's] constitutional claims." (*People v. Leonard* (2007) 40 Cal.4th 1370, 1410.)

Document received by the CA Supreme Court.

## PROOF OF SERVICE

I am a citizen of the United States, over the age of 18 years, employed in the County of Los Angeles, and not a party to the within action; my business address is 520 S. Grand Avenue, 4th Floor, Los Angeles, California 90071. I am employed by a member of the bar of this court.

On November 25, 2042, I served the within

## PETITION FOR REVIEW

in said action, by emailing and truefiling through TrueFiling a true copy thereof to:

Office of the Attorney General
docketinglaawt@doj.ca.gov,

Office of the Los Angeles County District Attorney
truefiling@da.lacounty.gov,

and by placing a true copy thereof enclosed in a sealed envelope, addressed as follows, and deposited the same in the United States Mail at Los Angeles, California:

Los Angeles County Superior Court
 Honorable Joseph Burghardt
Airport Courthouse
11701 S. La Cienga
Los Angeles, CA 90045

Lamont E. Horton, BV7277
California State Prison -
Los Angeles County
P.O. Box 8457
Lancaster, CA 93539-8457

I declare under penalty of perjury that the foregoing is true and correct.

Executed November 24, 2024, at Los Angeles, California.

/s/ Breanne Valdez-Sosa
BREANNE VALDEZ-SOSA

Document received by the CA Supreme Court.

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA,**<br>　　　Plaintiff and Respondent,<br><br>v.<br><br>**LAMONT EDWARD HORTON**<br>　　Defendant and Appellant. | No.<br>_____<br><br>Case No. B332643<br><br>Superior Court No.<br>SA 106976 |

APPEAL FROM THE SUPERIOR COURT
FOR THE COUNTY OF LOS ANGELES
THE HONORABLE JOSEPH BUGHARDT PRESIDING

**PETITION FOR REVIEW**

RICHARD LENNON
Executive Director

*SYDNEY BANACH
Staff Attorney SBN 347220

CALIFORNIA APPELLATE
PROJECT
520 S. Grand Avenue, 4th Floor
Los Angeles, CA 90071
Telephone: (213) 243-0300
Fax: (213) 243-0303
Email: Sydney@lacap.com

Attorneys for Appellant/Petitioner

Document received by the CA Supreme Court.

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PETITION FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

QUESTION PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATEMENT OF CASE AND FACTS . . . . . . . . . . . . . . . . . . . . . . . 8

NECESSITY FOR REVIEW AND ARGUMENT. . . . . . . . . . . . . . 9

     I.    PETITIONER'S SIXTH AMENDMENT RIGHTS
          WERE VIOLATED BY THE COURT'S DENIAL
          OF PETITIONER'S MOTION FOR A MISTRIAL
          AFTER A JUROR COMMITTED MISCONDUCT
          BY REFUSING TO DELIBERATE. . . . . . . . . . . . . . . 9

          A.    Relevant Legal Framework . . . . . . . . . . . . . . . . 9

          B.    Relevant Facts and Findings Below . . . . . . . . 11

          C.    The Court Erred in Denying Petitioner's
              Mistrial Motion for Juror Misconduct . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

WORD COUNT CERTIFICATION. . . . . . . . . . . . . . . . . . . . . . . . 16

APPENDIX A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Document received by the CA Supreme Court.

2



## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*Irvin v. Dowd* (1961)
  366 U.S. 717 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Stansbury v. California* (1994)
  511 U.S. 318 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

### STATE CASES

*In re Hitchings* (1993)
  6 Cal.4th 97 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Armstrong* (2016)
  1 Cal.5th 432 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Ayala* (2000)
  23 Cal.4th 225 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Bolden* (2002)
  29 Cal.4th 515 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Cleveland* (2001)
  25 Cal.4th 466 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Diaz* (1984)
  152 Cal.App.3d 926 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Guzman* (1977)
  66 Cal.App.3d 549 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Landry* (2016)
  2 Cal.5th 52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Marshall* (1996)
  13 Cal. 4th 799 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Document received by the CA Supreme Court.

*People v. Mil* (2012)
    53 Cal.4th 400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Salinas-Jacobo* (2019)
    33 Cal.App.5th 760 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Stansbury* (1993)
    4 Cal.4th 1017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Warren* (1986)
    176 Cal.App.3d 324 . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*People v. Watson* (2008)
    43 Cal.4th 652 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Weatherton* (2014)
    59 Cal.4th 589 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Wilson* (2008)
    43 Cal.4th 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Woodbury* (1970)
    10 Cal.App.3d 695 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## FEDERAL CONSTITUTION

**Amendments:**

    VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATE CONSTITUTION

**Article:**

    I, § 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Document received by the CA Supreme Court.

4

## STATE STATUTES

**Penal Code section:**

1089. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## CALIFORNIA RULES OF COURT

**Rule:**

8.500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

Document received by the CA Supreme Court.

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA,** <br> Plaintiff and Respondent, <br><br> v. <br><br> **LAMONT EDWARD HORTON,** <br> Defendant and Appellant. | No. _____ <br><br> Case No. B332643 <br><br> Superior Court No. SA106976 |

## PETITION FOR REVIEW

TO:   THE HONORABLE PATRICIA GUERRERO, CHIEF
     JUSTICE AND TO THE HONORABLE ASSOCIATE
     JUSTICES OF THE SUPREME COURT OF THE STATE
     OF CALIFORNIA:

Appellant/petitioner Lamont Horton respectfully requests this Court, pursuant to California Rules of Court, rule 8.500(a)(1), to grant review in the above entitled case following the October 15, 2024, unpublished opinion of the Court of Appeal, Second Appellate District, Division Seven, affirming petitioner's conviction for first degree murder. No rehearing petition was filed. A copy of the opinion is attached hereto as Appendix A.

Document received by the CA Supreme Court.

6

## QUESTION PRESENTED

1. Whether a defendant's Sixth and Fourteenth Amendment
rights are violated when a trial court denies a defendant's motion
for a mistrial for juror's misconduct after a juror's conduct,
including asking if she was being held hostage after demanding to
be allowed to go home, suggested that she was incapable of
deliberating?

Document received by the CA Supreme Court.

## STATEMENT OF CASE AND FACTS

For the purposes of this petition only, petitioner adopts the statement of case and facts as set forth in the opinion from the Court of Appeal. (Appendix A, at pp. 2-8.)

Document received by the CA Supreme Court.

## NECESSITY FOR REVIEW AND ARGUMENT

In petitioner's case, evidence demonstrated that a juror refused to deliberate. She called in sick, complained she was being held hostage, asked if she was going to jail, repeatedly requested to go home, and at one point, left the deliberation room and refused to return until the following day. Yet, while the trial court acknowledged her as problematic, it refused to dismiss her and denied petitioner's motion for a mistrial. The Court of Appeal found no abuse of discretion. Review should be granted to address this issue and provide guidance to lower courts tasked with evaluating whether a defendant's Sixth and Fourteenth Amendment rights to a fair and impartial jury are violated when a juror refuses to deliberate or is incapable of deliberating. Here, petitioner's rights were violated.

I.  **PETITIONER'S SIXTH AMENDMENT RIGHTS WERE VIOLATED BY THE COURT'S DENIAL OF PETITIONER'S MOTION FOR A MISTRIAL AFTER A JUROR COMMITTED MISCONDUCT BY REFUSING TO DELIBERATE**

### A.  Relevant Legal Framework

The right to a trial by a fair and impartial jury is guaranteed by both the California Constitution and the United States Constitution. ((U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 16; *Irvin v. Dowd* (1961) 366 U.S. 717, 722; see also *In re Hitchings* (1993) 6 Cal.4th 97, 110.) The Sixth Amendment right to an impartial jury means, in California, that

9

Document received by the CA Supreme Court.

reversal is required where a deliberating juror has committed
misconduct, for example, by prejudging the case (*People v.
Weatherton* (2014) 59 Cal.4th 589, 598) or refusing to deliberate
(*People v. Cleveland* (2001) 25 Cal.4th 466, 485). As stated in
*People v. Watson* (2008) 43 Cal.4th 652, "A juror's refusal to
deliberate constitutes proper grounds for removal." (*Id.*, at p. 696,
citing *People v. Cleveland* (2001) 25 Cal.4th 466, 485.)

Under California law, a juror can be removed "at any time"
if he or she becomes ill, which qualifies as "good cause" to find he
or she is "unable to perform his or her duty." (§ 1089; *People v.
Wilson* (2008) 43 Cal.4th 1, 25, quoting § 1089; see also *People v.
Landry* (2016) 2 Cal.5th 52, 89 [finding no abuse of discretion in
excusing a sick juror rather than granting a three-day
continuance].) "Good cause" for the discharge of an impaneled
juror also exists where the juror is "emotionally upset and
distraught, and stated that she 'could not decide the case on the
evidence and the law.'" (*People v. Warren* (1986) 176 Cal.App.3d
324, 327, citations omitted.) There must be a "demonstrable
reality" that he or she was unable to perform as a juror. (*People v.
Marshall* (1996) 13 Cal. 4th 799, 843.)

The purpose of a mistrial is to terminate a trial which has
or will deprive one or both of the parties of a fair trial. This Court
has recognized that such motions should be granted when "a
party's chances of receiving a fair trial have been irreparably
damaged." (*People v. Ayala* (2000) 23 Cal.4th 225, 282; see also
*People v. Bolden* (2002) 29 Cal.4th 515, 555.) Whether a

Document received by the CA Supreme Court.

particular incident is incurable or prejudicial is by its nature a
speculative matter, and the trial court is vested with considerable
discretion in ruling on mistrial motions. (*People v. Stansbury*
(1993) 4 Cal.4th 1017, 1060, reversed on another issue in
*Stansbury v. California* (1994) 511 U.S. 318; *People v. Woodbury*
(1970) 10 Cal.App.3d 695, 708.) "[J]ury misconduct challenges the
fundamental rights to an unprejudiced jury and the fairness of
the trial proceedings" (*People v. Diaz* (1984) 152 Cal.App.3d 926,
933). Thus, if not deemed structural error, the denial of counsel's
mistrial motion, based on juror misconduct, violates a defendant's
Due Process right to "a fair trial by an unbiased jury." (*People v.
Salinas-Jacobo* (2019) 33 Cal.App.5th 760, 762.)

### B.    Relevant Facts and Findings Below

After all the evidence was presented at the trial, Juror No.
9 called in and reported her dog was sick, and she would be late.
(4RT 810.) After she arrived, she asked the bailiff "when the trial
is going to begin," and "is it normal for jurors to be dropping out
during a trial?" (4RT 887, 888, 890.) An hour after deliberations
began, the bailiff found Juror No. 9 outside of the jury
deliberation room. (4RT 876.) The juror said she "threw up" and
repeatedly said she didn't want to be there, and asked if she
would go to jail and if she could go home. (4RT 877-879.) After the
bailiff told her she could not go home because she did not have a
medical condition or emergency, she said "Am I being held
hostage right now? I want to go home, and I don't want to do
this." (4RT 880.) The court allowed her to go home and discharged

Document received by the CA Supreme Court.

all the jurors for the day. (4RT 881-885.) The next day, Juror No.
9 returned, and a verdict was rendered in the afternoon. (4RT
886-887; 1CT 168.)

During this time, the trial court acknowledged there were
"serious issues" presented by the lack of alternates, because "one
of the jurors is very very problematic and does not want to be
around." (4RT 870, 876, 868.) The trial court stated, "it was pretty
clear that Juror No. 9 did not want to be there, did not want to be
a juror." (4RT 923, 924.) Defense counsel moved for mistrial on
the grounds of juror misconduct, stating, it appeared the other
jurors deliberated in Juror No. 9's absence and it appeared Juror
No. 9 was not deliberating or concentrating on the issues, which
"taints the entire process and the sanctity" of the trial and
violated petitioner's Due Process rights because "this is a very
serious case." (4RT 896, 897.) After the court denied the mistrial
motion and took the verdict, the judge asked the jurors, together,
if there had been any deliberations without all 12 jurors present,
which each denied. (4RT 898-908.)

The Court of Appeal found that the trial court did not abuse
its discretion in denying the motion for a mistrial because the
record did not show a "demonstrable reality" that Juror No. 9 was
unable to perform her duties as juror. (Appendix A, at p. 9.) The
Court held that the juror's questions that demonstrated her
impatience did not constitute misconduct. (Appendix A, at p. 11.)
The Court of Appeal found that even though Juror No. 9 left the
deliberation room at some points, deliberations stopped every
time she left the room. (Appendix A, at p. 12.) The court

12

Document received by the CA Supreme Court.

emphasized the juror never requested to be discharged, nor did she outright assert that she was unwilling to deliberate, and she returned the morning after she refused to reenter the deliberation room.  (Appendix A, at pp. 14-15.) Petitioner asserts that this conclusion involves an unreasonable determination of the facts and unreasonable application of the law.

### C.    The Court Erred in Denying Petitioner's Mistrial Motion for Juror Misconduct

Petitioner's constitutional right to a fair and impartial jury was violated because Juror No. 9 refused to deliberate or was incapable of deliberating. The juror's repeated assertions that she did not want to be present and her departure from the deliberation room all evinced that the juror was unwilling to deliberate. The record unequivocally shows that Juror No. 9's, failure to deliberate was "a demonstrable reality," and the trial court's conclusion was not manifestly supported by the evidence. (*People v. Armstrong* (2016) 1 Cal.5th 432. 453; *People v. Warren*, *supra*, 176 Cal.App.3d 324, 327 [failure to deliberate evinced by juror who "emotionally upset and distraught, and stated that she 'could not decide the case on the evidence and the law'"].)

Moreover, the fact that Juror No. 9 called in late the day before deliberations were to commence, asked "when will the case begin" after both sides rested, and repeatedly said she was being "held hostage" and wanted "to go home," 878, 879, 880) suggested she encouraged the jury to convict so she could in fact "go home." (4RT 878, 879, 880.) The record demonstrates her misconduct

13

Document received by the CA Supreme Court.

"could have affected the integrity of further deliberations." (*People v. Guzman* (1977) 66 Cal.App.3d 549, 561-559.)

The Court of Appeal failed to consider the impact of the juror's questions and refusal to deliberate on the other jurors. Moreover, the Court of Appeal did not consider the trial court's consideration of the lack of alternate jurors. Had the court discharged Juror No. 9, the case would have to be dismissed because there was no juror to replace her – a fact that gave the court "great concern" (8RT 870). This fact impelled the court to keep Juror No. 9 on the jury, which impacted "the sanctity of the deliberative process." (*People v. Mil* (2012) 53 Cal.4th 400, 410.)

Petitioner submits that trial court erred in denying petitioner's motion for a mistrial for juror misconduct, and petitioner was denied his right to a fair and impartial jury. Review should be granted.

Document received by the CA Supreme Court.

14

## CONCLUSION

Petitioner respectfully submits that for the foregoing reasons, review should be granted pursuant to Rule 8.500 of the California Rules of Court.

Dated: November 25, 2024          Respectfully submitted,

CALIFORNIA APPELLATE
PROJECT

By:
/s/ Sydney Banach
SYDNEY BANACH

Attorney for Appellant/Petitioner

Document received by the CA Supreme Court.

15

**WORD COUNT CERTIFICATION**
*People v. Lamont Edward Horton*

    I certify that this document was prepared on a computer using Corel Wordperfect, and that, according to that program, this document contains <u>1,702</u> words.

<div align="center">

<u>/s/ Sydney Banach</u>
SYDNEY BANACH

</div>

Document received by the CA Supreme Court.

16

**APPENDIX A**

Document received by the CA Supreme Court.

17

SUPREME COURT
FILED

DEC **3 1** 2024

Court of Appeal, Second Appellate District, Division Seven - No. B332643

Jorge Navarrete Clerk

S288035

Deputy

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

---

THE PEOPLE, Plaintiff and Respondent,

v.

LAMONT EDWARD HORTON, Defendant and Appellant.

---

The petition for review is denied.

GUERRERO
*Chief Justice*

LAMONT EDWARD HORTON
NAME

BN 7277
PRISON IDENTIFICATION/BOOKING NO.

44750 60TH STREET WEST
ADDRESS OR PLACE OF CONFINEMENT

LANCASTER, CA. 93536

Note:    It is your responsibility to notify the Clerk of Court in writing of any
change of address. If represented by an attorney, provide his or her
name, address, telephone and facsimile numbers, and e-mail address.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMONT EDWARD HORTON<br>FULL NAME (Include name under which you were convicted )<br><br>                                        Petitioner,<br><br>                      v.<br><br><br>E. LUNDY<br>NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED<br>PERSON HAVING CUSTODY OF PETITIONER<br><br>                                        Respondent. | CASE NUMBER:<br><br>CV<br>To be supplied by the Clerk of the United States District Court<br><br><br>☐ _____ **AMENDED**<br><br>**PETITION FOR WRIT OF HABEAS CORPUS<br>BY A PERSON IN STATE CUSTODY<br>28 U.S.C. § 2254**<br><br>PLACE/COUNTY OF CONVICTION LOS ANGELES COUNTY<br>PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT<br>(List by case number )<br>CV _____<br>CV _____ |

### INSTRUCTIONS - PLEASE READ CAREFULLY

1.    To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.    In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge judgments entered by more than one California state court, you must file a separate petition for each court.

3.    Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.    Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.    You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. You must also state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

6.    You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

7.    When you have completed the form, send the original and two copies to the following address:
                      Clerk of the United States District Court for the Central District of California
                      United States Courthouse
                      ATTN: Intake/Docket Section
                      255 East Temple Street, Suite TS-134
                      Los Angeles, California 90012

PLEASE COMPLETE THE FOLLOWING (*check appropriate number*):

This petition concerns:
1. ☒ a conviction and/or sentence.
2. ☐ prison discipline.
3. ☐ a parole problem.
4. ☐ other.

## PETITION

1. Venue
   a. Place of detention  CALIFORNIA STATE PRISON - LOS ANGELES COUNTY
   b. Place of conviction and sentence  LOS ANGELES, CALIFORNIA

2. Conviction on which the petition is based *(a separate petition must be filed for each conviction being attacked)*.
   a. Nature of offenses involved *(include all counts)* : FIRST DEGREE MURDER, USE OF A DEADLY
   OR DANGEROUS WEAPON
   b. Penal or other code section or sections: PC §187(A), PC §12022(b)(i)

   c. Case number: SA106976
   d. Date of conviction: MAY 12, 2023
   e. Date of sentence: JULY 27, 2023
   f. Length of sentence on each count: COUNT (1) 75 YEARS TO LIFE, COUNT (2)
   1 YEAR
   g. Plea *(check one)*:
      ☒ Not guilty
      ☐ Guilty
      ☐ Nolo contendere
   h. Kind of trial *(check one)* :
      ☒ Jury
      ☐ Judge only

3. Did you appeal to the California Court of Appeal from the judgment of conviction?    ☒ Yes  ☐ No
   If so, give the following information for your appeal *(and attach a copy of the Court of Appeal decision if available)*:
   a. Case number: B332643
   b. Grounds raised *(list each)*:
      (1) TRIAL COURT ERRED IN DENYING MOTION FOR MISTRIAL BASED ON JUROR
      (2) MISCONDUCT

(3) _____

(4) _____

(5) _____

(6) _____

c. Date of decision: _October 17, 2024_

d. Result _JUDGEMENT AFFIRMED_

_____

4. If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision? ☑ Yes   ☐ No

If so, give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

a. Case number: _S288035_

b. Grounds raised *(list each)*:

(1) _PETITIONER'S 6TH AMENDMENT RIGHTS WERE VIOLATED BY COURT'S DENIAL FOR_

(2) _MISTRIAL AFTER JUROR COMMITTED MISCONDUCT_

(3) _PETITIONER'S 14TH AMENDMENT RIGHTS WERE VIOLATED BY COURT'S DENIAL FOR_

(4) _MISTRIAL AFTER JUROR COMMITTED MISCONDUCT_

(5) _____

(6) _____

c. Date of decision: _DECEMBER 31, 2024_

d. Result _PETITION FOR REVIEW DENIED_

_____

5. If you did not appeal:

a. State your reasons _____

_____

_____

_____

b. Did you seek permission to file a late appeal?    ☐ Yes   ☐ No

6. Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?

☐ Yes   ☑ No

If so, give the following information for each such petition *(use additional pages, if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a. (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

    (a) _____

    (b) _____

    (c) _____

    (d) _____

    (e) _____

    (f) _____

(5) Date of decision: _____

(6) Result _____
_____

(7) Was an evidentiary hearing held?    ☐ Yes    ☐ No

b.  (1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

        (a) _____

        (b) _____

        (c) _____

        (d) _____

        (e) _____

        (f) _____

    (5) Date of decision: _____

    (6) Result _____
_____

    (7) Was an evidentiary hearing held?    ☐ Yes    ☐ No

c.  (1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

        (a) _____

        (b) _____

        (c) _____

        (d) _____

        (e) _____

        (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes ☐ No

7.  Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

8.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the <u>facts</u> supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

CAUTION:    *Exhaustion Requirement*: In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court. This means that, prior to seeking relief from the federal court, you first must present <u>all</u> of your grounds to the California Supreme Court.

a.  Ground one: PETITIONER'S 6TH/14TH CONSTITUTIONAL RIGHTS WERE VIOLATED BY TRIAL COURT'S DENIAL OF MOTION FOR MISTRIAL AFTER JUROR COMMITTED MISCONDUCT

(1) Supporting FACTS: TRIAL COURT DID NOT ADEQUATELY ADDRESS JUROR MISCONDUCT. RECORD AFFIRMATIVELY SHOWED (2) JURORS WERE OUTSIDE THE PRESENCE OF THE REMAINING (10) JURORS DURING DELIBERATIONS IN THE HALLWAY. JUROR #9 "DID NOT WANT TO DO THIS ANYMORE" ASKED IF "SHE WAS BEING HELD HOSTAGE" ASKED "IF SHE WAS GOING TO JAIL" TRIAL JUDGE BURGHARDT DID NOT INFORM ANY PARTIE

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☒ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☒ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☒ Yes    ☐ No

b.  Ground two: JUDGE BURGHARDT FAILED TO INFORM PARTIES ABOUT JUROR #9'S CONDUCT

(1) Supporting FACTS: DEPUTY KUSAK SPOKE WITH JUDGE BURGHARDT ABOUT WHAT HAPPENED AND THERE WERE NO ALTERNATE JURORS LEFT. JUDGE EXCUSED THE JURORS AND DID NOT INFORM ANY THE

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?  ☐ Yes  ☒ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?  ☐ Yes  ☒ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?  ☐ Yes  ☒ No

c.  Ground three: _____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?  ☐ Yes  ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?  ☐ Yes  ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?  ☐ Yes  ☐ No

d.  Ground four: _____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?  ☐ Yes  ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?  ☐ Yes  ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?  ☐ Yes  ☐ No

e.  Ground five: _____

(1) Supporting FACTS: _____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?  ☐ Yes  ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐Yes    ☐No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐Yes    ☐No

9.  If any of the grounds listed in paragraph 8 were not previously presented to the California Supreme Court, state
    briefly which grounds were not presented, and give your reasons: JUDGE BURCHARDT'S FAILURE TO INFORM
    PARTIES ABOUT THE PROBLEMATIC JUROR AND POSSIBLE MISCONDUCT LEADING BEING JUDGE BURCHARDT
    WAS NOT AVAILABLE THE NEXT DAY CONTACT WAS ON A FRIE, AND BELIEVED THIS WAS PART OF MISTRIAL MOTION

10. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?
    ☐Yes    ☒No

    If so, give the following information for each such petition *(use additional pages, if necessary, and attach copies of the petitions and
    the rulings on the petitions if available)*:

    a.  (1) Name of court: _____

        (2) Case number: _____

        (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

        (4) Grounds raised *(list each)*:

            (a) _____

            (b) _____

            (c) _____

            (d) _____

            (e) _____

            (f) _____

        (5) Date of decision: _____

        (6) Result _____

            _____

        (7) Was an evidentiary hearing held?    ☐Yes ☐No

    b.  (1) Name of court: _____

        (2) Case number: _____

        (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

        (4) Grounds raised *(list each)*:

            (a) _____

            (b) _____

            (c) _____

            (d) _____

            (e) _____

            (f) _____

        (5) Date of decision: _____

(6) Result _____

(7) Was an evidentiary hearing held?        ☐ Yes ☐ No

11. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to
    this judgment of conviction?        ☐ Yes  ☒ No

    If so, give the following information *(and attach a copy of the petition if available)*:

    (1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

        (a) _____
        (b) _____
        (c) _____
        (d) _____
        (e) _____
        (f) _____

12. Are you presently represented by counsel?        ☐ Yes  ☒ No

    If so, provide name, address and telephone number: _____

    _____

    _____

WHEREFORE, petitioner prays that the Court grant petitioner all relief to which he may be entitled in this proceeding.

_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on   2 / 12 / 2025          _____
            *Date*                              *Signature of Petitioner*

LAMONT EDWARD HORTON
_____
Petitioner

E. LUNDY
_____
Respondent(s)

**ELECTION REGARDING
CONSENT TO PROCEED BEFORE
A UNITED STATES MAGISTRATE JUDGE**

- A magistrate judge is available under 28 U.S.C. § 636(c) to conduct all proceedings in this case, including dispositive matters and entry of final judgment. However, a magistrate judge may be assigned to rule on dispositive matters only if all parties voluntarily consent.

- Parties are free to withhold consent to magistrate judge jurisdiction without adverse substantive consequences.

- If both parties consent to have a magistrate judge decide the case, any appeal would be made directly to the Ninth Circuit Court of Appeals, as if a district judge had decided the matter.

- Unless both parties consent to have a magistrate judge decide the case, the assigned magistrate judge will continue to decide only non-dispositive matters, and will issue a Report and Recommendation to the district judge as to all dispositive matters.

*Please check the "yes" or "no" box regarding your decision to consent to a United States Magistrate Judge and sign below.*

☐ Yes, I voluntarily consent to have a United States Magistrate Judge conduct all further proceedings in this case, decide all dispositive and non-dispositive matters, and order the entry of final judgment.

☒ No, I do not consent to have a United States Magistrate Judge conduct all further proceedings in this case.

Executed on   2 / 12 / 2025
                _____
                Date

_____
Signature of Petitioner/Counsel for Petitioner

LAMONT EDWARD HOLTON
_____
Petitioner

E. LUNDY
_____
Respondent(s)

**DECLARATION IN SUPPORT
OF REQUEST
TO PROCEED
IN FORMA PAUPERIS**

I, LAMONT EDWARD HOLTON_____, declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?  ☐ Yes  ☒ No

   a. If the answer is yes, state the amount of your salary or wages per month, and give the name and address of your employer. _____

   b. If the answer is no, state the date of last employment and the amount of the salary and wages per month which you received. 8/11/2022 / $1200.⁰⁰ MONTHLY

2. Have you received, within the past twelve months, any money from any of the following sources?

   a. Business, profession or form of self-employment?   ☐ Yes  ☒ No
   b. Rent payments, interest or dividends?   ☐ Yes  ☒ No
   c. Pensions, annuities or life insurance payments?   ☐ Yes  ☒ No
   d. Gifts or inheritances?   ☐ Yes  ☒ No
   e. Any other sources?   ☒ Yes  ☐ No

   If the answer to any of the above is yes, describe each source of money and state the amount received from each during the past twelve months: J. PAY _____

   _____

3. Do you own any cash, or do you have money in a checking or savings account?  *(Include any funds in prison accounts)*
   ☐ Yes  ☒ No

If the answer is yes, state the total value of the items owned: _____

_____

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property? *(Excluding ordinary household furnishings and clothing)* ☐ Yes  ☒ No

If the answer is yes, describe the property and state its approximate value: _____

_____

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support: _____

_____

_____

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on   2/12/2025                    _____
                  *Date*                                *Signature of Petitioner*

## CERTIFICATE

I hereby certify that the Petitioner herein has the sum of $ _____ on account to his credit at the _____ institution where he is confined. I further certify that Petitioner likewise has the following securities to his credit according to the records of said institution: _____

_____

_____

_____         _____
          *Date*                         *Authorized Officer of Institution/Title of Officer*

Filed 10/17/24

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

COURT OF APPEAL – SECOND DIST.

**FILED**

Oct 17, 2024

EVA McCLINTOCK, Clerk

C.Meza        **Deputy Clerk**

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>LAMONT EDWARD HORTON,<br><br>        Defendant and Appellant. | B332643<br><br>(Los Angeles County<br>Super. Ct. No. SA106976) |

Document received by the CA Supreme Court.

        APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph J. Burghardt, Judge. Affirmed.

        Judith Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

Lamont Edward Horton appeals from his jury conviction of first degree murder (Pen. Code, § 187, subd. (a)),[1] contending the trial court erred in denying his motion for a mistrial based on juror misconduct. He contends there was good cause under section 1089 to discharge one of the jurors for "refusing to deliberate." Although the record shows the juror got sick and left the jury room during deliberations, it does not show a demonstrable reality that the juror refused to deliberate. On the contrary, deliberations simply paused and resumed the next day without incident. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A.     *Charges, Conviction, and Sentencing*

On August 11, 2022, around 10:30 a.m., Tre Matthis heard two loud voices coming from the apartment below his: one male voice and the other female. The male voice yelled angrily, and the female voice screamed for help. Matthis immediately went to the leasing office at the apartment building and told the front desk attendant someone needed to investigate what was going on in the unit.

Joel Vierra, the building manager, went to the apartment below Matthis's apartment. Tiffany Hall lived there and was married to Horton. Vierra knocked on the door and heard the deadbolt close, but no one answered. Minutes later, while Vierra

---

[1]     All undesignated statutory references are to the Penal Code.

[2]     Because the only issue before us on appeal relates to juror misconduct, we provide an abbreviated summary of the evidence underlying Horton's conviction.

Document received by the CA Supreme Court.

was still standing outside Hall's front door, he saw a thin, African American man walking toward him with his head down and wearing a hat, tennis shoes, and shorts with tights underneath. Vierra yelled, " 'Hey, stop,' " but the man turned around and ran toward an exit.

Around 10:50 a.m., Officer Matthew Cordova of the Santa Monica Police Department (SMPD) heard a radio call regarding the incident and drove towards Hall's apartment building. As Cordova neared the building, he saw Horton, who matched the description of the suspect on the radio call, running along the sidewalk. Cordova pursued Horton and eventually placed him in handcuffs. Horton had blood on his cheek, hand, and sneaker.

SMPD officers searched Hall's apartment and found large pools of blood in the kitchen and living room. There was a bloody knife in the kitchen sink, and Hall's body was stuffed inside a small suitcase. It was later determined Hall died of multiple stab wounds. A DNA analysis showed the blood on Hall and the knife contained Horton's DNA. The blood on Horton contained Hall's DNA.

The Los Angeles County District Attorney charged Horton in an information with murder (§ 187, subd. (a)) and alleged that Horton personally used a deadly or dangerous weapon in committing the murder (§ 12022, subd. (b)(1)). The People additionally alleged that Horton had two prior "strike" convictions (§§ 667, subds. (b)-(j); 1170.12, subd. (b)).

The trial began in May 2023. Horton testified that on the day of the murder, he got into an argument with Hall. During the argument, he "blacked out," and then at some point, he regained consciousness, saw a lot of blood, and ran out of the apartment. Horton admitted, "I believe I'm the reason why [Hall]

Document received by the CA Supreme Court.

is not here.  I believe I'm the cause of her death."  However, Horton testified he did not remember how Hall died.

After two days of deliberations, the jury convicted Horton of first degree murder and found the knife enhancement true. Horton waived his right to a jury trial on the allegations that he had two prior strike convictions, and after a court trial the court found them to be true.  The court sentenced Horton to 76 years to life in state prison, consisting of 75 years to life for the murder under the Three Strikes law and one year for the knife enhancement.  Horton timely appealed.

B.   *Relevant Jury Deliberations and Post-trial Motion*

At some point during the evidentiary portion of the trial, when there was one alternate juror left, Juror No. 9 asked the judicial assistant, " 'What happens if we lose all the alternates?' " The judicial assistant responded, " 'That's not going to happen before we finish.' "  Juror No. 9 then asked, " 'When are we going to finish?,' " to which the judicial assistant responded, " 'You need to talk to the judge.' "  Judge Joseph Burghardt answered Juror No. 9's questions in front of the entire juror panel.

On May 11, 2023, before closing arguments began, Juror No. 9 called the judicial assistant to say she was running late because she "had an emergency with [her] dog."  Judge Burghardt took a recess to wait for Juror No. 9 to arrive.  Once Juror No. 9 arrived at approximately 10:30 a.m., both sides gave closing arguments.

Around 12:00 p.m., Juror No. 9 asked Deputy Kusak, " 'Where is the trial going to take place?,' " and " 'Is it normal for jurors to be dropping out during the trial?' "  Kusak told her to ask her questions after the lunch break.  After the lunch break, Juror No. 9 did not ask any questions.  The People gave their

Document received by the CA Supreme Court.

rebuttal argument followed by the court's final instructions. Around 2:00 p.m., the jury began its deliberations.

About an hour later, one of the jurors called the judicial assistant and said that one of the female jurors was sick. The judicial assistant told Kusak about the situation. Kusak approached the room where the jurors were deliberating and saw two jurors, including Juror No. 9, outside in the hallway. Juror No. 9 was sitting on the floor and said, " 'I just threw up.' " When Kusak asked if he should call the paramedics or if she had a medical condition, Juror No. 9 said repeatedly, " 'No, I just don't want to be here anymore.' " Juror No. 9 repeatedly asked, " 'Am I going to jail?' " The bailiff told her, " 'This has nothing to do with jail. I just want to make sure you're okay.' " Juror No. 9 said, " 'Am I being held hostage right now?' " She repeatedly said, " 'I want to go home, and I don't want to do this.' " Kusak responded, " 'As of right now, you cannot go home.' "

Kusak left Juror No. 9 in the hallway with the second juror who was trying to calm her down. Kusak spoke to Judge Burghardt about what happened. At this point, there were no alternate jurors left. Based on Judge Burghardt's instructions, the deputies obtained contact information from the jurors and excused them for the day, with instructions for all of them (including Juror No. 9) to call the court the next morning and on a daily basis until Juror No. 9 was able to come back to court and finish the deliberations. All the jurors left at around 3:30 p.m. Judge Burghardt did not inform either party about the situation.[3]

---

[3]    On appeal, Horton does not challenge Judge Burghardt's decision not to inform the parties about Juror No. 9's conduct.

Document received by the CA Supreme Court.

The next morning, May 12, Juror No. 9 called the judicial assistant and said she was able to return to court. She came to court, and the jury resumed its deliberations around 10:49 a.m.

At approximately 2:45 p.m., the jury sent the court a note requesting a copy of the closing arguments. Judge Lauren Birnstein was covering for Judge Burghardt for the afternoon. In discussing how to respond to the jury question, Judge Birnstein commented, "One of the jurors is very, very problematic and does not want to be around." (Judge Birnstein later indicated Judge Burghardt had advised her this was the case.) Around 3:39 p.m., the jury indicated it had reached a verdict.

Before Judge Birnstein called the jury into the courtroom for the verdict to be read, defense counsel requested "to put some things on the record." Counsel stated, "I learned some information about Juror No. 9 and some of the issues that [were] going on around with her. I believe . . . she was found outside of the jury room, the original jury room." Judge Birnstein subsequently questioned the court deputies, the judicial assistant, and the attorneys for both sides about the facts concerning Juror No. 9.[4]

After the investigation, Judge Birnstein found there was no evidence the jury deliberations contained "anything strange" or "anything wrong whatsoever." The court stated, "[O]ne would assume that if there were problems during deliberations, the jury would have sent a note. . . . Any one of those jurors could have sent a note if there was anything strange going on during the

---

[4]     The facts included above are derived from Judge Birnstein's investigation.

Document received by the CA Supreme Court.

deliberations." The court proposed taking the verdict and holding the jury in the courtroom for additional questioning.

Defense counsel objected to Judge Birnstein taking the verdict and made an oral motion for a mistrial based on "juror misconduct." Defense counsel argued, "I think that [the jurors] were not all together at the same time. There were two jurors that were outside. We don't know whether the other jurors continued to deliberate or not. It's just not clean. [¶] And I was just not notified of this at all. . . . I knew that this juror was particularly problematic. But I was hoping that she would be more in line and follow the directions and orders of the court. [¶] It doesn't seem that she has, and so I think that that taints the entire process and the sanctity of what is required for Mr. Horton in terms of due process and a fair trial."

Judge Birnstein denied the mistrial motion.[5] Before bringing the jurors back into the courtroom, the judge invited the parties to propose additional questions to ask the jurors. Defense counsel proposed questions and did not object to the court's final questions.

After the verdict was read, Judge Birnstein addressed the jurors and stated, "So it's my understanding that one of the jurors fell ill during the course of the deliberations, and that the juror was observed to be outside of the deliberation room in the hallway – in the back hallway here. And there was another juror who was caring for her at that time. [¶] So my first question . . . is: Did any deliberations whatsoever, meaning talking about the case or the facts, the evidence, the law – did any of that go on

---

[5]    Horton does not challenge Judge Birnstein's decision to rule on the motion for a mistrial in Judge Burghardt's place.

Document received by the CA Supreme Court.

while the two jurors were outside or any juror was outside of the deliberating room?" Each juror answered, "No," except for Juror No. 9 who said, "I wasn't in the room."

Judge Birnstein then asked the jurors, "Do you believe that all of the jurors followed the instructions of the law as given to you by Judge Burghardt? . . . [¶] Your proceedings, your procedure, all of that, do you think all the jurors followed the law that he gave you?" The foreperson answered, "Yes," and all the other jurors agreed. Thereafter, Judge Birnstein excused the jurors from further service.

Once the jurors left the courtroom, defense counsel stated, "I would point out that [Juror No.] 12 lied when he said that there were no deliberations inside the room. There's no way he would have known that when he was outside in the hallway helping [Juror No.] 9." Judge Birnstein replied, "But . . . all the other jurors answered that no deliberations took place."[6]

## DISCUSSION

Horton argues the trial court erred in denying his motion for a mistrial based on the trial court's refusal to dismiss Juror

---

[6] Later, defense counsel filed a petition to release juror information under Code of Civil Procedure section 237. Judge Burghardt denied the motion, concluding the defense did not make a prima facie showing of good cause under the statute. In denying the motion, Judge Burghart stated, "[I]t was pretty clear that Juror No. 9 did not want to be there, did not want to be a juror," but there was no "evidence that there was any misconduct in the deliberation process" or that "she refused to deliberate." Because Horton appeals only Judge Birnstein's denial of the mistrial motion, Judge Burghardt's order is not relevant to our analysis.

Document received by the CA Supreme Court.

No. 9.  Horton claims there was " 'good cause' " under section 1098 to dismiss Juror No. 9 because she "refused to deliberate."

We review the denial of a mistrial motion under the deferential abuse of discretion standard.  (*People v. Ramirez* (2006) 39 Cal.4th 398, 462; *People v. Silva* (2001) 25 Cal.4th 345, 372.)  " 'A trial court should grant a mistrial only when a party's chances of receiving a fair trial have been irreparably damaged' " (*Ramirez*, at p. 462), i.e., where " 'the court is apprised of prejudice that it judges incurable by admonition or instruction' " (*People v. Suarez* (2020) 10 Cal.5th 116, 148).

The trial court did not abuse its discretion in finding there was no juror misconduct under section 1089, and thus the court did not abuse its discretion in denying the motion for a mistrial.  (See *People v. Harris* (2013) 57 Cal.4th 804, 857 [finding no abuse of discretion in denying defendant's motion for mistrial in the absence of proof of prejudicial juror misconduct].)

A.    *Section 1089*

"[S]ection 1089 ' "authorizes the trial court to discharge a juror at any time before or after the final submission of the case to the jury if, upon good cause, the juror is 'found to be unable to perform his or her duty.' " ' "  (*People v. Rangel* (2016) 62 Cal.4th 1192, 1211; see § 1089.)  "The most common application of [section 1089] permits the removal of a juror who becomes physically or emotionally unable to continue to serve as a juror due to illness or other circumstances."  (*People v. Cleveland* (2001) 25 Cal.4th 466, 485; see *People v. Jones* (2020) 50 Cal.App.5th 694, 700 (*Jones*) ["Dismissal may be appropriate [under section 1089] when a juror is emotionally unable to continue" with deliberations].)  Section 1089 has also "been applied to permit the removal of a juror who refuses to deliberate,

Document received by the CA Supreme Court.

on the theory that such a juror is 'unable to perform his duty' within the meaning of [] section 1089." (*Cleveland*, at p. 475; see *People v. Alexander* (2010) 49 Cal.4th 846, 926 ["The court properly may dismiss a juror based on the juror's "unwillingness to engage in the deliberative process."].)

" 'The trial court's authority to discharge a juror includes the authority to conduct an appropriate investigation concerning whether there is good cause to do so.' " (*People v. Alexander*, *supra*, 49 Cal.4th at p. 926; see *People v. Beeler* (1995) 9 Cal.4th 953, 989, overruled on other grounds in *People v. Pearson* (2013) 56 Cal.4th 393, 462 ["The court's discretion in deciding whether to discharge a juror encompasses the discretion to decide what specific procedures to employ including whether to conduct a hearing or detailed inquiry."].) " 'Great caution is required when deciding to excuse a sitting juror.' " (*Jones*, *supra*, 50 Cal.App.5th at pp. 700-701, quoting *People v. Allen and Johnson* (2011) 53 Cal.4th 60, 71.) "[T]o ensure the sanctity and secrecy of the deliberative process, a trial court's inquiry into grounds for discharging a deliberating juror should be as limited as possible, and should cease once the court is satisfied that the juror in question 'is participating in deliberations and has not expressed an intention to disregard the court's instructions or otherwise committed misconduct, and that no other proper ground for discharge exists.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 53.) A court may not resolve ambiguity as to a juror's state of mind by "presuming the worst" of a juror. (*Jones*, at p. 702; accord, *Shanks v. Department of Transportation* (2017) 9 Cal.App.5th 543, 553.)

" 'Before an appellate court will find error in failing to excuse a seated juror, the juror's inability to perform a juror's

Document received by the CA Supreme Court.

functions must be shown by the record to be a "demonstrable reality." The court . . . will uphold the trial court's exercise of discretion on whether a seated juror should be discharged for good cause under section 1089 if supported by substantial evidence.' " (*People v. Jablonski* (2006) 37 Cal.4th 774, 807; see *People v. Rangel, supra*, 62 Cal.4th at p. 1211 [" ' "[W]hen a trial court's denial of a motion to discharge a juror is supported by substantial evidence, it will be upheld." ' "].)

B.    *The Trial Court Did Not Err in Denying Horton's Motion for a Mistrial*

The record does not show a "demonstrable reality" that Juror No. 9 was unable or unwilling to perform her duties. (*People v. Jablonski, supra*, 37 Cal.4th at p. 807.)  Judge Birnstein conducted a sufficient investigation into possible juror misconduct, examining court staff, bailiffs, and attorneys who interacted with Juror No. 9 or overheard her interactions with others.  The investigation revealed that during the evidentiary portion of the trial and during breaks between closing arguments, Juror No. 9 asked the judicial assistant and bailiff several questions about trial procedures, such as " 'When are we going to finish?,' " and " 'Is it normal for jurors to be dropping out during the trial?' "  Juror No. 9 also professed to have an emergency with her dog that caused her to be late on the day of closing arguments.  The court appropriately determined none of that conduct constituted misconduct.

The investigation also showed that an hour after deliberations began, Juror No. 9 left the jury room and sat in the hallway.  She said, " 'I just threw up,' " " 'I just don't want to be here anymore,' " and " 'I want to go home.' "  At that point, Judge Burghardt excused all the jurors for the remainder of the

Document received by the CA Supreme Court.

afternoon.  The next morning, Juror No. 9 returned to court and deliberated for several hours before reaching a verdict.  When questioned, the jurors agreed that deliberations paused when Juror No. 9 left the jury room, and they followed the law at all times.  Judge Birnstein did not abuse her discretion in finding no misconduct as a result of Juror No. 9 leaving the room.[7]

"By statute, illness is cause to dismiss a juror." (*People v. Duff* (2014) 58 Cal.4th 527, 560.)  However, "[w]hether a juror's illness can best be accommodated by a continuance or replacement with an alternate is a matter committed to the trial court's discretion." (*Id.* at p. 561.)  The court's decision to continue the case to the next morning was not an abuse of discretion.  Juror No. 9 became sick when the evidentiary portion of the trial ended, and the jury started deliberating.  Because the presentation of evidence had concluded, a brief continuance to the

---

[7]    Although Horton's brief contains a heading stating, "The judgment should be reversed for juror misconduct because Juror No. 9 refused to deliberate *and deliberations were undertaken in her absence*" (italics added; capitalization omitted), Horton provides no evidence or argument that deliberations took place when Juror No. 9 was outside the jury room.  He has forfeited the contention on appeal. (See *Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1458 [" 'Mere suggestions of error without supporting argument or authority . . . do not properly present grounds for appellate review.' "]; accord, *In re S.C.* (2006) 138 Cal.App.4th 396, 408.)  Horton also suggests in passing that Juror No. 9's questions and repeated statements that she wanted "to go home" after becoming ill suggest she "may have encouraged the jury to convict so she could . . . 'go home.' "  This speculative argument lacks any factual or legal support and is likewise forfeited. (See *In re S.C.*, at p. 408.)

Document received by the CA Supreme Court.

next morning did not impair either party, and Horton does not contend otherwise.  (Cf. *ibid.* [court did not abuse discretion in excusing ill juror who would likely be out for two days because a two-day continuance "would result in a lengthy gap between presentation of evidence and closing arguments on one or both sides, a gap that might impair either party's presentations or impact juror deliberations"].)  More importantly, the record shows that the brief continuance resolved any doubt about Juror No. 9's capabilities as a juror.  Juror No. 9 returned the next day and deliberated without any further complications.

Horton argues the record shows as a " 'demonstrable reality' " that Juror No. 9 was "refusing to deliberate" when she sat in the hallway and said she did not want to be there anymore.  We reject the argument.  "Even the most diligent juror may reach the end of his attention span at some point during a trial." (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 418, overruled on other grounds in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.)  In *People v. Henderson* (2022) 78 Cal.App.5th 530, the appellate court held the trial court erred by " 'presuming the worst' " of a juror and discharging him under section 1089 when "[a]t best, the evidence established that [the juror] was looking forward to his jury duty being over, a sentiment that does not strike us unusual for jurors in a lengthy trial, especially when trying to juggle work and perform their civic duty at the same time." (*Henderson*, at pp. 562-563.)  The court held that "[s]uch a feeling did not signal that the juror could not perform his duty." (*Id.* at p. 563.)

*Jones*, *supra*, 50 Cal.App.5th 694 is also instructive.  In *Jones*, after the jury began deliberating, Juror No. 10 left the jury room and told the courtroom clerk that another juror revealed

Document received by the CA Supreme Court.

extraneous information during deliberations about the defendant's prior criminal history. (*Id.* at p. 689.) Juror No. 10 felt " 'extremely upset' " and " 'somewhat coerced' " by the event because the other juror revealed the information after Juror No. 10 had expressed reservations about the charges. (*Id.* at p. 701.) The trial court asked Juror No. 10 if " 'it would be very difficult for you to continue in your deliberations,' " to which Juror No. 10 replied, "Yes." (*Ibid.*) Finding that Juror No. 10 had expressed " 'an inability to continue deliberating,' " the trial court dismissed Juror No. 10. (*Id.* at p. 699.)

Our colleagues in *Jones* concluded the record did not show, as a demonstrable reality, that Juror No. 10 was unwilling to continue deliberating. (*Jones, supra,* 50 Cal.App.5th at pp. 704-705.) "Juror No. 10 never requested to be discharged, nor did she ever say she was unwilling or unable to continue deliberating." (*Id.* at p. 701.) Also, the trial court "never asked [Juror No. 10] directly whether she could continue." (*Id.* at p. 702.) Rather, the court asked her if it would be " 'very difficult' " for her to continue, which invited an "equivocal" response—"Juror No. 10 could have meant she was incapable of continuing to deliberate, or she could have meant she was capable of continuing to deliberate but it would be hard to do so." (*Ibid.*) When a juror's answer is ambivalent, the court is " 'not entitled to . . . presum[e] the worst.' " (*Ibid.*)

Like the juror in *Jones,* here, Juror No. 9 never requested to be discharged, nor did she ever say she was unwilling to continue deliberating altogether. Rather, she expressed not wanting to be there and wanting to go home at that point in time. She had deliberated without incident for an hour before she took ill. And even if Juror No. 9's conduct in the hallway could have

Document received by the CA Supreme Court.

been interpreted as an expression of her refusal to continue to
deliberate, that possibility was quickly dispelled the next
morning when Juror No. 9 returned to court and resumed
deliberating.  (See *People v. Goldberg* (1984) 161 Cal.App.3d 170,
191-192 [no abuse of discretion in keeping juror where juror
became extremely upset and asked to be excused, but after
discussing the issue with the judge, juror agreed to continue
deliberating].)

 In sum, the record does not indicate that Juror No. 9
refused to deliberate or was unable to perform her duty as a
juror.  The trial court did not abuse its discretion in finding there
was "nothing . . . wrong whatsoever" with the jury deliberations.
Because there was no juror misconduct, it follows that the record
is absent of any "incurably prejudicial" incident that would justify
granting a mistrial motion.  (*People v. Suarez*, *supra*, 10 Cal.5th
at p. 148.)  Thus, we conclude the trial court did not abuse of
discretion in denying the mistrial motion.[8]

### DISPOSITION

 The judgment is affirmed.

STONE, J.

We concur:

MARTINEZ, P. J.

SEGAL, J.

_____

[8] To the extent Horton contends the court's failure to
discharge Juror No. 9 violated his state and federal constitutional
rights, we reject the claim.  The "conclusion that the trial court
did not violate [section 1089] necessarily disposes of [a
defendant's] constitutional claims." (*People v. Leonard* (2007)
40 Cal.4th 1370, 1410.)

Document received by the CA Supreme Court.

## PROOF OF SERVICE

I am a citizen of the United States, over the age of 18 years, employed in the County of Los Angeles, and not a party to the within action; my business address is 520 S. Grand Avenue, 4th Floor, Los Angeles, California 90071. I am employed by a member of the bar of this court.

On November 25, 2042, I served the within

## PETITION FOR REVIEW

in said action, by emailing and truefiling through TrueFiling a true copy thereof to:

Office of the Attorney General
docketinglaawt@doj.ca.gov,

Office of the Los Angeles County District Attorney
truefiling@da.lacounty.gov,

and by placing a true copy thereof enclosed in a sealed envelope, addressed as follows, and deposited the same in the United States Mail at Los Angeles, California:

Los Angeles County Superior Court
Honorable Joseph Burghardt
Airport Courthouse
11701 S. La Cienga
Los Angeles, CA 90045

Lamont E. Horton, BV7277
California State Prison -
Los Angeles County
P.O. Box 8457
Lancaster, CA 93539-8457

I declare under penalty of perjury that the foregoing is true and correct.

Executed November 24, 2024, at Los Angeles, California.

/s/ Breanne Valdez-Sosa
BREANNE VALDEZ-SOSA

Document received by the CA Supreme Court.

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA,**<br>        Plaintiff and Respondent,<br><br>v.<br><br>**LAMONT EDWARD HORTON**<br>        Defendant and Appellant. | No. _____<br><br>Case No. B332643<br><br>Superior Court No.<br>SA 106976 |

APPEAL FROM THE SUPERIOR COURT
FOR THE COUNTY OF LOS ANGELES
THE HONORABLE JOSEPH BUGHARDT PRESIDING

### PETITION FOR REVIEW

RICHARD LENNON
Executive Director

*SYDNEY BANACH
Staff Attorney SBN 347220

CALIFORNIA APPELLATE
PROJECT
520 S. Grand Avenue, 4th Floor
Los Angeles, CA 90071
Telephone: (213) 243-0300
Fax: (213) 243-0303
Email: Sydney@lacap.com

Attorneys for Appellant/Petitioner

Document received by the CA Supreme Court.

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PETITION FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

QUESTION PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATEMENT OF CASE AND FACTS . . . . . . . . . . . . . . . . . . . . . 8

NECESSITY FOR REVIEW AND ARGUMENT . . . . . . . . . . . . . . 9

    I.    PETITIONER'S SIXTH AMENDMENT RIGHTS
             WERE VIOLATED BY THE COURT'S DENIAL
             OF PETITIONER'S MOTION FOR A MISTRIAL
             AFTER A JUROR COMMITTED MISCONDUCT
             BY REFUSING TO DELIBERATE . . . . . . . . . . . . . . . 9

          A.    Relevant Legal Framework . . . . . . . . . . . . . . . 9

          B.    Relevant Facts and Findings Below . . . . . . . . 11

          C.    The Court Erred in Denying Petitioner's
               Mistrial Motion for Juror Misconduct . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

WORD COUNT CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . 16

APPENDIX A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Document received by the CA Supreme Court.

2

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Irvin v. Dowd* (1961)
    366 U.S. 717 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Stansbury v. California* (1994)
    511 U.S. 318 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATE CASES

*In re Hitchings* (1993)
    6 Cal.4th 97 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Armstrong* (2016)
    1 Cal.5th 432 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Ayala* (2000)
    23 Cal.4th 225 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Bolden* (2002)
    29 Cal.4th 515 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Cleveland* (2001)
    25 Cal.4th 466 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Diaz* (1984)
    152 Cal.App.3d 926 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Guzman* (1977)
    66 Cal.App.3d 549 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Landry* (2016)
    2 Cal.5th 52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Marshall* (1996)
    13 Cal. 4th 799 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Document received by the CA Supreme Court.

3

*People v. Mil* (2012)
    53 Cal.4th 400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Salinas-Jacobo* (2019)
    33 Cal.App.5th 760 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Stansbury* (1993)
    4 Cal.4th 1017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Warren* (1986)
    176 Cal.App.3d 324 . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*People v. Watson* (2008)
    43 Cal.4th 652 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Weatherton* (2014)
    59 Cal.4th 589 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Wilson* (2008)
    43 Cal.4th 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Woodbury* (1970)
    10 Cal.App.3d 695 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## FEDERAL CONSTITUTION

**Amendments:**

    VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATE CONSTITUTION

**Article:**

    I, § 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Document received by the CA Supreme Court.

# STATE STATUTES

**Penal Code section:**

1089. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## CALIFORNIA RULES OF COURT

**Rule:**

8.500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

Document received by the CA Supreme Court.

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA,**<br>        Plaintiff and Respondent,<br><br>v.<br><br>**LAMONT EDWARD HORTON,**<br>        Defendant and Appellant. | No. _____<br>_____<br><br>Case No. B332643<br><br>Superior Court No.<br>SA106976 |

## PETITION FOR REVIEW

TO:   THE HONORABLE PATRICIA GUERRERO, CHIEF
JUSTICE AND TO THE HONORABLE ASSOCIATE
JUSTICES OF THE SUPREME COURT OF THE STATE
OF CALIFORNIA:

Appellant/petitioner Lamont Horton respectfully requests
this Court, pursuant to California Rules of Court, rule 8.500(a)(1),
to grant review in the above entitled case following the October
15, 2024, unpublished opinion of the Court of Appeal, Second
Appellate District, Division Seven, affirming petitioner's
conviction for first degree murder. No rehearing petition was
filed. A copy of the opinion is attached hereto as Appendix A.

Document received by the CA Supreme Court.

## QUESTION PRESENTED

1. Whether a defendant's Sixth and Fourteenth Amendment rights are violated when a trial court denies a defendant's motion for a mistrial for juror's misconduct after a juror's conduct, including asking if she was being held hostage after demanding to be allowed to go home, suggested that she was incapable of deliberating?

Document received by the CA Supreme Court.

## STATEMENT OF CASE AND FACTS

For the purposes of this petition only, petitioner adopts the statement of case and facts as set forth in the opinion from the Court of Appeal. (Appendix A, at pp. 2-8.)

Document received by the CA Supreme Court.

8

## NECESSITY FOR REVIEW AND ARGUMENT

In petitioner's case, evidence demonstrated that a juror refused to deliberate. She called in sick, complained she was being held hostage, asked if she was going to jail, repeatedly requested to go home, and at one point, left the deliberation room and refused to return until the following day. Yet, while the trial court acknowledged her as problematic, it refused to dismiss her and denied petitioner's motion for a mistrial. The Court of Appeal found no abuse of discretion. Review should be granted to address this issue and provide guidance to lower courts tasked with evaluating whether a defendant's Sixth and Fourteenth Amendment rights to a fair and impartial jury are violated when a juror refuses to deliberate or is incapable of deliberating. Here, petitioner's rights were violated.

## I. PETITIONER'S SIXTH AMENDMENT RIGHTS WERE VIOLATED BY THE COURT'S DENIAL OF PETITIONER'S MOTION FOR A MISTRIAL AFTER A JUROR COMMITTED MISCONDUCT BY REFUSING TO DELIBERATE

### A. Relevant Legal Framework

The right to a trial by a fair and impartial jury is guaranteed by both the California Constitution and the United States Constitution. ((U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 16; *Irvin v. Dowd* (1961) 366 U.S. 717, 722; see also *In re Hitchings* (1993) 6 Cal.4th 97, 110.) The Sixth Amendment right to an impartial jury means, in California, that

<div style="writing-mode: vertical">Document received by the CA Supreme Court.</div>

reversal is required where a deliberating juror has committed misconduct, for example, by prejudging the case (*People v. Weatherton* (2014) 59 Cal.4th 589, 598) or refusing to deliberate (*People v. Cleveland* (2001) 25 Cal.4th 466, 485). As stated in *People v. Watson* (2008) 43 Cal.4th 652, "A juror's refusal to deliberate constitutes proper grounds for removal." (*Id.*, at p. 696, citing *People v. Cleveland* (2001) 25 Cal.4th 466, 485.)

Under California law, a juror can be removed "at any time" if he or she becomes ill, which qualifies as "good cause" to find he or she is "unable to perform his or her duty." (§ 1089; *People v. Wilson* (2008) 43 Cal.4th 1, 25, quoting § 1089; see also *People v. Landry* (2016) 2 Cal.5th 52, 89 [finding no abuse of discretion in excusing a sick juror rather than granting a three-day continuance].) "Good cause" for the discharge of an impaneled juror also exists where the juror is "emotionally upset and distraught, and stated that she 'could not decide the case on the evidence and the law.'" (*People v. Warren* (1986) 176 Cal.App.3d 324, 327, citations omitted.) There must be a "demonstrable reality" that he or she was unable to perform as a juror. (*People v. Marshall* (1996) 13 Cal. 4th 799, 843.)

The purpose of a mistrial is to terminate a trial which has or will deprive one or both of the parties of a fair trial. This Court has recognized that such motions should be granted when "a party's chances of receiving a fair trial have been irreparably damaged." (*People v. Ayala* (2000) 23 Cal.4th 225, 282; see also *People v. Bolden* (2002) 29 Cal.4th 515, 555.) Whether a

Document received by the CA Supreme Court.

particular incident is incurable or prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. (*People v. Stansbury* (1993) 4 Cal.4th 1017, 1060, reversed on another issue in *Stansbury v. California* (1994) 511 U.S. 318; *People v. Woodbury* (1970) 10 Cal.App.3d 695, 708.) "[J]ury misconduct challenges the fundamental rights to an unprejudiced jury and the fairness of the trial proceedings" (*People v. Diaz* (1984) 152 Cal.App.3d 926, 933). Thus, if not deemed structural error, the denial of counsel's mistrial motion, based on juror misconduct, violates a defendant's Due Process right to "a fair trial by an unbiased jury." (*People v. Salinas-Jacobo* (2019) 33 Cal.App.5th 760, 762.)

**B.     Relevant Facts and Findings Below**

After all the evidence was presented at the trial, Juror No. 9 called in and reported her dog was sick, and she would be late. (4RT 810.) After she arrived, she asked the bailiff "when the trial is going to begin," and "is it normal for jurors to be dropping out during a trial?" (4RT 887, 888, 890.) An hour after deliberations began, the bailiff found Juror No. 9 outside of the jury deliberation room. (4RT 876.) The juror said she "threw up" and repeatedly said she didn't want to be there, and asked if she would go to jail and if she could go home. (4RT 877-879.) After the bailiff told her she could not go home because she did not have a medical condition or emergency, she said "Am I being held hostage right now? I want to go home, and I don't want to do this." (4RT 880.) The court allowed her to go home and discharged

Document received by the CA Supreme Court.

11

all the jurors for the day. (4RT 881-885.) The next day, Juror No. 9 returned, and a verdict was rendered in the afternoon. (4RT 886-887; 1CT 168.)

During this time, the trial court acknowledged there were "serious issues" presented by the lack of alternates, because "one of the jurors is very very problematic and does not want to be around." (4RT 870, 876, 868.) The trial court stated, "it was pretty clear that Juror No. 9 did not want to be there, did not want to be a juror." (4RT 923, 924.) Defense counsel moved for mistrial on the grounds of juror misconduct, stating, it appeared the other jurors deliberated in Juror No. 9's absence and it appeared Juror No. 9 was not deliberating or concentrating on the issues, which "taints the entire process and the sanctity" of the trial and violated petitioner's Due Process rights because "this is a very serious case." (4RT 896, 897.) After the court denied the mistrial motion and took the verdict, the judge asked the jurors, together, if there had been any deliberations without all 12 jurors present, which each denied. (4RT 898-908.)

The Court of Appeal found that the trial court did not abuse its discretion in denying the motion for a mistrial because the record did not show a "demonstrable reality" that Juror No. 9 was unable to perform her duties as juror. (Appendix A, at p. 9.) The Court held that the juror's questions that demonstrated her impatience did not constitute misconduct. (Appendix A, at p. 11.) The Court of Appeal found that even though Juror No. 9 left the deliberation room at some points, deliberations stopped every time she left the room. (Appendix A, at p. 12.) The court

*Document received by the CA Supreme Court.*

12

emphasized the juror never requested to be discharged, nor did she outright assert that she was unwilling to deliberate, and she returned the morning after she refused to reenter the deliberation room.  (Appendix A, at pp. 14-15.) Petitioner asserts that this conclusion involves an unreasonable determination of the facts and unreasonable application of the law.

### C.    The Court Erred in Denying Petitioner's Mistrial Motion for Juror Misconduct

Petitioner's constitutional right to a fair and impartial jury was violated because Juror No. 9 refused to deliberate or was incapable of deliberating. The juror's repeated assertions that she did not want to be present and her departure from the deliberation room all evinced that the juror was unwilling to deliberate. The record unequivocally shows that Juror No. 9's failure to deliberate was "a demonstrable reality," and the trial court's conclusion was not manifestly supported by the evidence. (*People v. Armstrong* (2016) 1 Cal.5th 432. 453; *People v. Warren*, *supra*, 176 Cal.App.3d 324, 327 [failure to deliberate evinced by juror who "emotionally upset and distraught, and stated that she 'could not decide the case on the evidence and the law'"].)

Moreover, the fact that Juror No. 9 called in late the day before deliberations were to commence, asked "when will the case begin" after both sides rested, and repeatedly said she was being "held hostage" and wanted "to go home," 878, 879, 880) suggested she encouraged the jury to convict so she could in fact "go home." (4RT 878, 879, 880.) The record demonstrates her misconduct

13

Document received by the CA Supreme Court.

"could have affected the integrity of further deliberations." (*People v. Guzman* (1977) 66 Cal.App.3d 549, 561-559.)

The Court of Appeal failed to consider the impact of the juror's questions and refusal to deliberate on the other jurors. Moreover, the Court of Appeal did not consider the trial court's consideration of the lack of alternate jurors. Had the court discharged Juror No. 9, the case would have to be dismissed because there was no juror to replace her – a fact that gave the court "great concern" (8RT 870). This fact impelled the court to keep Juror No. 9 on the jury, which impacted "the sanctity of the deliberative process." (*People v. Mil* (2012) 53 Cal.4th 400, 410.)

Petitioner submits that trial court erred in denying petitioner's motion for a mistrial for juror misconduct, and petitioner was denied his right to a fair and impartial jury. Review should be granted.

Document received by the CA Supreme Court.

14

## CONCLUSION

Petitioner respectfully submits that for the foregoing reasons, review should be granted pursuant to Rule 8.500 of the California Rules of Court.

Dated: November 25, 2024    Respectfully submitted,

CALIFORNIA APPELLATE PROJECT

By:
/s/ Sydney Banach
SYDNEY BANACH

Attorney for Appellant/Petitioner

Document received by the CA Supreme Court.

15

## WORD COUNT CERTIFICATION
### *People v. Lamont Edward Horton*

I certify that this document was prepared on a computer using Corel Wordperfect, and that, according to that program, this document contains 1,702 words.

/s/ Sydney Banach
SYDNEY BANACH

Document received by the CA Supreme Court.

16

APPENDIX A

Document received by the CA Supreme Court.

SUPREME COURT
FILED

Court of Appeal, Second Appellate District, Division Seven - No. B332643

DEC **3 1** 2024

Jorge Navarrete Clerk

S288035

Deputy

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

THE PEOPLE, Plaintiff and Respondent,

v.

LAMONT EDWARD HORTON, Defendant and Appellant.

The petition for review is denied.

GUERRERO
*Chief Justice*

NAME

LAMONT EDWARD HORTON

PRISON IDENTIFICATION/BOOKING NO.

BV 7277

ADDRESS OR PLACE OF CONFINEMENT

44750 60TH STREET WEST

LANCASTER, CA. 93536

Note:     It is your responsibility to notify the Clerk of Court in writing of any change of address. If represented by an attorney, provide his or her name, address, telephone and facsimile numbers, and e-mail address.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CASE NUMBER:

FULL NAME (Include name under which you were convicted)

LAMONT EDWARD HORTON

Petitioner,

v.

NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER

E. LUNDY

Respondent.

CV

To be supplied by the Clerk of the United States District Court

☐ _____ **AMENDED**

**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**
**28 U.S.C. § 2254**

PLACE/COUNTY OF CONVICTION LOS ANGELES COUNTY
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(List by case number)
CV _____
CV _____

## INSTRUCTIONS - PLEASE READ CAREFULLY

1. To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2. In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge judgments entered by more than one California state court, you must file a separate petition for each court.

3. Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4. Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5. You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. You must also state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

6. You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

7. When you have completed the form, send the original and two copies to the following address:

> Clerk of the United States District Court for the Central District of California
> United States Courthouse
> ATTN: Intake/Docket Section
> 255 East Temple Street, Suite TS-134
> Los Angeles, California 90012

PLEASE COMPLETE THE FOLLOWING (*check appropriate number*):

This petition concerns:
1. ☒ a conviction and/or sentence.
2. ☐ prison discipline.
3. ☐ a parole problem.
4. ☐ other.

## PETITION

1. Venue

    a. Place of detention  CALIFORNIA STATE PRISON-LOS ANGELES COUNTY

    b. Place of conviction and sentence  LOS ANGELES, CALIFORNIA

2. Conviction on which the petition is based (*a separate petition must be filed for each conviction being attacked*).

    a. Nature of offenses involved (*include all counts*):  FIRST DEGREE MURDER, USE OF A DEADLY OR DANGEROUS WEAPON

    b. Penal or other code section or sections:  PC §187(A), PC §12022(b)(1)

    c. Case number:  SA106976

    d. Date of conviction:  MAY 12, 2023

    e. Date of sentence:  JULY 27, 2023

    f. Length of sentence on each count:  COUNT (1) 75 YEARS TO LIFE, COUNT (2) 1 YEAR

    g. Plea (*check one*):

    ☒ Not guilty

    ☐ Guilty

    ☐ Nolo contendere

    h. Kind of trial (*check one*):

    ☒ Jury

    ☐ Judge only

3. Did you appeal to the California Court of Appeal from the judgment of conviction?    ☒ Yes  ☐ No

    If so, give the following information for your appeal (*and attach a copy of the Court of Appeal decision if available*):

    a. Case number:  B332643

    b. Grounds raised (*list each*):

    (1) TRIAL COURT ERRED IN DENYING MOTION FOR MISTRIAL BASED ON JUROR

    (2) MISCONDUCT

(3) _____

(4) _____

(5) _____

(6) _____

c. Date of decision: OCTOBER 17, 2024

d. Result: JUDGEMENT AFFIRMED

_____

4. If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision? ☑ Yes ☐ No

If so, give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

a. Case number: S288035

b. Grounds raised *(list each)*:

(1) PETITIONER'S 6TH AMENDMENT RIGHTS WERE VIOLATED BY COURT'S DENIAL FOR

(2) MISTRIAL AFTER JUROR COMMITTED MISCONDUCT

(3) PETITIONER'S 14TH AMENDMENT RIGHTS WERE VIOLATED BY COURT'S DENIAL FOR

(4) MISTRIAL AFTER JUROR COMMITTED MISCONDUCT

(5) _____

(6) _____

c. Date of decision: DECEMBER 31, 2024

d. Result: PETITION FOR REVIEW DENIED

_____

5. If you did not appeal:

a. State your reasons _____

_____

_____

_____

_____

b. Did you seek permission to file a late appeal?    ☐ Yes  ☐ No

6. Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction? ☐ Yes ☑ No

If so, give the following information for each such petition *(use additional pages, if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a. (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

    (a) _____

    (b) _____

    (c) _____

    (d) _____

    (e) _____

    (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes    ☐ No

b.  (1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

        (a) _____

        (b) _____

        (c) _____

        (d) _____

        (e) _____

        (f) _____

    (5) Date of decision: _____

    (6) Result _____

_____

    (7) Was an evidentiary hearing held?    ☐ Yes    ☐ No

c.  (1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

        (a) _____

        (b) _____

        (c) _____

        (d) _____

        (e) _____

        (f) _____

(5) Date of decision: _____

(6) Result _____

_____

_____

(7) Was an evidentiary hearing held?     ☐ Yes ☐ No

7.   Did you file a petition for certiorari in the United States Supreme Court?     ☐ Yes     ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

8.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the <u>facts</u> supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

**CAUTION**:     *Exhaustion Requirement*: In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court. This means that, prior to seeking relief from the federal court, you first must present <u>all</u> of your grounds to the California Supreme Court.

a.   Ground one: PETITIONER'S 6TH/14TH CONSTITUTIONAL RIGHTS WERE VIOLATED BY TRIAL COURT'S DENIAL OF MOTION FOR MISTRIAL AFTER JUROR COMMITTED MISCONDUCT

(1) Supporting FACTS: TRIAL COURT DID NOT ADEQUATELY ADDRESS JUROR MISCONDUCT. RECORD AFFIRMATIVELY SHOWED (2) JURORS WERE OUTSIDE THE PRESENCE OF THE REMAINING (10) JURORS DURING DELIBERATIONS IN THE HALLWAY. JUROR #9 "DID NOT WANT TO DO THIS ANYMORE" ASKED IF "SHE WAS BEING HELD HOSTAGE" ASKED "IF SHE WAS GOING TO JAIL" TRIAL JUDGE BURGHARDT DID NOT INFORM ANY PARTIE

(2) Did you raise this claim on direct appeal to the California Court of Appeal?     ☒ Yes     ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?     ☒ Yes     ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?     ☒ Yes     ☐ No

b.   Ground two: JUDGE BURGHARDT FAILED TO INFORM PARTIES ABOUT JUROR #9'S CONDUCT

(1) Supporting FACTS: DEPUTY KUSAK SPOKE WITH JUDGE BURGHARDT ABOUT WHAT HAPPENED AND THERE WERE NO ALTERNATE JURORS LEFT. JUDGE EXCUSED THE JURORS AND DID NOT INFORM ANYONE

_____
_____
_____
_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☒ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☐ Yes ☒ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court? ☐ Yes ☒ No

c.   Ground three: _____
_____

(1) Supporting FACTS: _____
_____
_____
_____
_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☐ Yes ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court? ☐ Yes ☐ No

d.   Ground four: _____

(1) Supporting FACTS: _____
_____
_____
_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☐ Yes ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court? ☐ Yes ☐ No

e.   Ground five: _____

(1) Supporting FACTS: _____
_____
_____
_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?  ☐ Yes  ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?  ☐ Yes  ☐ No

9. If any of the grounds listed in paragraph 8 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: JUDGE BURGHARDT'S FAILURE TO INFORM PARTIES ABOUT THE PROBLEMATIC JUROR AND POSSIBLE MISCONDUCT, REASON BEING JUDGE BURGHARDT WAS NOT AVAILABLE THE NEXT DAY, COUNSEL WAS NO AGAIN, AND BELIEVED THIS WAS PART OF MISTRIAL MOTION

10. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?
☐ Yes    ☒ No

If so, give the following information for each such petition *(use additional pages, if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.  (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes ☐ No

b.  (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes ☐ No

11. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to this judgment of conviction?    ☐ Yes ☒ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

12. Are you presently represented by counsel?    ☐ Yes ☒ No

If so, provide name, address and telephone number: _____

_____

_____

WHEREFORE, petitioner prays that the Court grant petitioner all relief to which he may be entitled in this proceeding.

_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on  2 / 12 / 2025          _____
            *Date*                                *Signature of Petitioner*

LAMONT EDWARD HORTON
_____
           *Petitioner*


E. LUNDI
_____
           *Respondent(s)*

**ELECTION REGARDING
CONSENT TO PROCEED BEFORE
A UNITED STATES MAGISTRATE JUDGE**

- A magistrate judge is available under 28 U.S.C. § 636(c) to conduct all proceedings in this case, including dispositive matters and entry of final judgment. However, a magistrate judge may be assigned to rule on dispositive matters only if all parties voluntarily consent.

- Parties are free to withhold consent to magistrate judge jurisdiction without adverse substantive consequences.

- If both parties consent to have a magistrate judge decide the case, any appeal would be made directly to the Ninth Circuit Court of Appeals, as if a district judge had decided the matter.

- Unless both parties consent to have a magistrate judge decide the case, the assigned magistrate judge will continue to decide only non-dispositive matters, and will issue a Report and Recommendation to the district judge as to all dispositive matters.

*Please check the "yes" or "no" box regarding your decision to consent to a United States Magistrate Judge and sign below.*

☐ Yes, I voluntarily consent to have a United States Magistrate Judge conduct all further proceedings in this case, decide all dispositive and non-dispositive matters, and order the entry of final judgment.

☒ No, I do not consent to have a United States Magistrate Judge conduct all further proceedings in this case.

Executed on   2 / 12 / 2025
                _____          _____
                        *Date*                    *Signature of Petitioner/Counsel for Petitioner*

LAMONT EDWARD HOLTON
_____
*Petitioner*

Ea LUNDY
_____
*Respondent(s)*

**DECLARATION IN SUPPORT
OF REQUEST
TO PROCEED
*IN FORMA PAUPERIS***

I, LAMONT EDWARD HOLTON _____, declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1.  Are you presently employed?  ☐ Yes  ☒ No

    a.  If the answer is yes, state the amount of your salary or wages per month, and give the name and address of your employer. _____

    _____

    b.  If the answer is no, state the date of last employment and the amount of the salary and wages per month which you received. 6/11/2022 / $1200.00 MONTHLY

2.  Have you received, within the past twelve months, any money from any of the following sources?

    a.  Business, profession or form of self-employment?  ☐ Yes  ☒ No
    b.  Rent payments, interest or dividends?  ☐ Yes  ☒ No
    c.  Pensions, annuities or life insurance payments?  ☐ Yes  ☒ No
    d.  Gifts or inheritances?  ☐ Yes  ☒ No
    e.  Any other sources?  ☒ Yes  ☐ No

    If the answer to any of the above is yes, describe each source of money and state the amount received from each during the past twelve months:  J - PAY

    _____

    _____

3.  Do you own any cash, or do you have money in a checking or savings account?  *(Include any funds in prison accounts)*
    ☐ Yes  ☒ No

If the answer is yes, state the total value of the items owned: _____

_____

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property? *(Excluding ordinary household furnishings and clothing)* ☐ Yes  ☑ No

   If the answer is yes, describe the property and state its approximate value: _____

   _____

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support: _____

   _____

   _____

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on   2 / 12 / 2025                    _____
              _____                       Signature of Petitioner
                 Date

## CERTIFICATE

I hereby certify that the Petitioner herein has the sum of $ _____ on account to his credit

at the _____ institution where he is

confined. I further certify that Petitioner likewise has the following securities to his credit according to the records of said

institution: _____

_____

_____

_____                    _____
     *Date*                            *Authorized Officer of Institution/Title of Officer*

Filed 10/17/24

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

COURT OF APPEAL – SECOND DIST.

# FILED

Oct 17, 2024

EVA McCLINTOCK, Clerk

C.Meza                    Deputy Clerk

|  |  |
|---|---|
| THE PEOPLE, | B332643 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. SA106976) |
| LAMONT EDWARD HORTON, | |
| Defendant and Appellant. | |

Document received by the CA Supreme Court.

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph J. Burghardt, Judge. Affirmed.

Judith Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

Lamont Edward Horton appeals from his jury conviction of first degree murder (Pen. Code, § 187, subd. (a)),[1] contending the trial court erred in denying his motion for a mistrial based on juror misconduct. He contends there was good cause under section 1089 to discharge one of the jurors for "refusing to deliberate." Although the record shows the juror got sick and left the jury room during deliberations, it does not show a demonstrable reality that the juror refused to deliberate. On the contrary, deliberations simply paused and resumed the next day without incident. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A.    *Charges, Conviction, and Sentencing*

On August 11, 2022, around 10:30 a.m., Tre Matthis heard two loud voices coming from the apartment below his: one male voice and the other female. The male voice yelled angrily, and the female voice screamed for help. Matthis immediately went to the leasing office at the apartment building and told the front desk attendant someone needed to investigate what was going on in the unit.

Joel Vierra, the building manager, went to the apartment below Matthis's apartment. Tiffany Hall lived there and was married to Horton. Vierra knocked on the door and heard the deadbolt close, but no one answered. Minutes later, while Vierra

---

[1]    All undesignated statutory references are to the Penal Code.

[2]    Because the only issue before us on appeal relates to juror misconduct, we provide an abbreviated summary of the evidence underlying Horton's conviction.

Document received by the CA Supreme Court.

was still standing outside Hall's front door, he saw a thin, African
American man walking toward him with his head down and
wearing a hat, tennis shoes, and shorts with tights underneath.
Vierra yelled, " 'Hey, stop,' " but the man turned around and ran
toward an exit.

Around 10:50 a.m., Officer Matthew Cordova of the Santa
Monica Police Department (SMPD) heard a radio call regarding
the incident and drove towards Hall's apartment building. As
Cordova neared the building, he saw Horton, who matched the
description of the suspect on the radio call, running along the
sidewalk. Cordova pursued Horton and eventually placed him in
handcuffs. Horton had blood on his cheek, hand, and sneaker.

SMPD officers searched Hall's apartment and found large
pools of blood in the kitchen and living room. There was a bloody
knife in the kitchen sink, and Hall's body was stuffed inside a
small suitcase. It was later determined Hall died of multiple stab
wounds. A DNA analysis showed the blood on Hall and the knife
contained Horton's DNA. The blood on Horton contained Hall's
DNA.

The Los Angeles County District Attorney charged Horton
in an information with murder (§ 187, subd. (a)) and alleged that
Horton personally used a deadly or dangerous weapon in
committing the murder (§ 12022, subd. (b)(1)). The People
additionally alleged that Horton had two prior "strike"
convictions (§§ 667, subds. (b)-(j); 1170.12, subd. (b)).

The trial began in May 2023. Horton testified that on the
day of the murder, he got into an argument with Hall. During
the argument, he "blacked out," and then at some point, he
regained consciousness, saw a lot of blood, and ran out of the
apartment. Horton admitted, "I believe I'm the reason why [Hall]

Document received by the CA Supreme Court.

is not here.  I believe I'm the cause of her death."  However, Horton testified he did not remember how Hall died.

After two days of deliberations, the jury convicted Horton of first degree murder and found the knife enhancement true. Horton waived his right to a jury trial on the allegations that he had two prior strike convictions, and after a court trial the court found them to be true.  The court sentenced Horton to 76 years to life in state prison, consisting of 75 years to life for the murder under the Three Strikes law and one year for the knife enhancement.  Horton timely appealed.

B.    *Relevant Jury Deliberations and Post-trial Motion*

At some point during the evidentiary portion of the trial, when there was one alternate juror left, Juror No. 9 asked the judicial assistant, " 'What happens if we lose all the alternates?' " The judicial assistant responded, " 'That's not going to happen before we finish.' "  Juror No. 9 then asked, " 'When are we going to finish?,' " to which the judicial assistant responded, " 'You need to talk to the judge.' "  Judge Joseph Burghardt answered Juror No. 9's questions in front of the entire juror panel.

On May 11, 2023, before closing arguments began, Juror No. 9 called the judicial assistant to say she was running late because she "had an emergency with [her] dog."  Judge Burghardt took a recess to wait for Juror No. 9 to arrive.  Once Juror No. 9 arrived at approximately 10:30 a.m., both sides gave closing arguments.

Around 12:00 p.m., Juror No. 9 asked Deputy Kusak, " 'Where is the trial going to take place?,' " and " 'Is it normal for jurors to be dropping out during the trial?' "  Kusak told her to ask her questions after the lunch break.  After the lunch break, Juror No. 9 did not ask any questions.  The People gave their

Document received by the CA Supreme Court.

rebuttal argument followed by the court's final instructions.
Around 2:00 p.m., the jury began its deliberations.

About an hour later, one of the jurors called the judicial
assistant and said that one of the female jurors was sick. The
judicial assistant told Kusak about the situation. Kusak
approached the room where the jurors were deliberating and saw
two jurors, including Juror No. 9, outside in the hallway. Juror
No. 9 was sitting on the floor and said, " 'I just threw up.' " When
Kusak asked if he should call the paramedics or if she had a
medical condition, Juror No. 9 said repeatedly, " 'No, I just don't
want to be here anymore.' " Juror No. 9 repeatedly asked, " 'Am I
going to jail?' " The bailiff told her, " 'This has nothing to do with
jail. I just want to make sure you're okay.' " Juror No. 9 said,
" 'Am I being held hostage right now?' " She repeatedly said, " 'I
want to go home, and I don't want to do this.' " Kusak responded,
" 'As of right now, you cannot go home.' "

Kusak left Juror No. 9 in the hallway with the second juror
who was trying to calm her down. Kusak spoke to Judge
Burghardt about what happened. At this point, there were no
alternate jurors left. Based on Judge Burghardt's instructions,
the deputies obtained contact information from the jurors and
excused them for the day, with instructions for all of them
(including Juror No. 9) to call the court the next morning and on
a daily basis until Juror No. 9 was able to come back to court and
finish the deliberations. All the jurors left at around 3:30 p.m.
Judge Burghardt did not inform either party about the situation.[3]

---

[3]    On appeal, Horton does not challenge Judge Burghardt's
decision not to inform the parties about Juror No. 9's conduct.

Document received by the CA Supreme Court.

The next morning, May 12, Juror No. 9 called the judicial
assistant and said she was able to return to court.  She came to
court, and the jury resumed its deliberations around 10:49 a.m.

At approximately 2:45 p.m., the jury sent the court a note
requesting a copy of the closing arguments.  Judge Lauren
Birnstein was covering for Judge Burghardt for the afternoon.  In
discussing how to respond to the jury question, Judge Birnstein
commented, "One of the jurors is very, very problematic and does
not want to be around."  (Judge Birnstein later indicated Judge
Burghardt had advised her this was the case.)  Around 3:39 p.m.,
the jury indicated it had reached a verdict.

Before Judge Birnstein called the jury into the courtroom
for the verdict to be read, defense counsel requested "to put some
things on the record."  Counsel stated, "I learned some
information about Juror No. 9 and some of the issues that [were]
going on around with her.  I believe . . . she was found outside of
the jury room, the original jury room."  Judge Birnstein
subsequently questioned the court deputies, the judicial
assistant, and the attorneys for both sides about the facts
concerning Juror No. 9.[4]

After the investigation, Judge Birnstein found there was no
evidence the jury deliberations contained "anything strange" or
"anything wrong whatsoever."  The court stated, "[O]ne would
assume that if there were problems during deliberations, the jury
would have sent a note. . . .  Any one of those jurors could have
sent a note if there was anything strange going on during the

---

[4]    The facts included above are derived from Judge
Birnstein's investigation.

Document received by the CA Supreme Court.

deliberations." The court proposed taking the verdict and holding
the jury in the courtroom for additional questioning.

Defense counsel objected to Judge Birnstein taking the
verdict and made an oral motion for a mistrial based on "juror
misconduct." Defense counsel argued, "I think that [the jurors]
were not all together at the same time. There were two jurors
that were outside. We don't know whether the other jurors
continued to deliberate or not. It's just not clean. [¶] And I was
just not notified of this at all. . . . I knew that this juror was
particularly problematic. But I was hoping that she would be
more in line and follow the directions and orders of the court. [¶]
It doesn't seem that she has, and so I think that that taints the
entire process and the sanctity of what is required for Mr. Horton
in terms of due process and a fair trial."

Judge Birnstein denied the mistrial motion.[5] Before
bringing the jurors back into the courtroom, the judge invited the
parties to propose additional questions to ask the jurors. Defense
counsel proposed questions and did not object to the court's final
questions.

After the verdict was read, Judge Birnstein addressed the
jurors and stated, "So it's my understanding that one of the
jurors fell ill during the course of the deliberations, and that the
juror was observed to be outside of the deliberation room in the
hallway – in the back hallway here. And there was another juror
who was caring for her at that time. [¶] So my first question . . .
is: Did any deliberations whatsoever, meaning talking about the
case or the facts, the evidence, the law – did any of that go on

---

[5]    Horton does not challenge Judge Birnstein's decision to
rule on the motion for a mistrial in Judge Burghardt's place.

<div style="text-align: right">Document received by the CA Supreme Court.</div>

while the two jurors were outside or any juror was outside of the deliberating room?"  Each juror answered, "No," except for Juror No. 9 who said, "I wasn't in the room."

Judge Birnstein then asked the jurors, "Do you believe that all of the jurors followed the instructions of the law as given to you by Judge Burghardt? . . .  [¶]  Your proceedings, your procedure, all of that, do you think all the jurors followed the law that he gave you?"  The foreperson answered, "Yes," and all the other jurors agreed.  Thereafter, Judge Birnstein excused the jurors from further service.

Once the jurors left the courtroom, defense counsel stated, "I would point out that [Juror No.] 12 lied when he said that there were no deliberations inside the room.  There's no way he would have known that when he was outside in the hallway helping [Juror No.] 9."  Judge Birnstein replied, "But . . . all the other jurors answered that no deliberations took place."[6]

## DISCUSSION

Horton argues the trial court erred in denying his motion for a mistrial based on the trial court's refusal to dismiss Juror

---

[6]    Later, defense counsel filed a petition to release juror information under Code of Civil Procedure section 237.  Judge Burghardt denied the motion, concluding the defense did not make a prima facie showing of good cause under the statute.  In denying the motion, Judge Burghart stated, "[I]t was pretty clear that Juror No. 9 did not want to be there, did not want to be a juror," but there was no "evidence that there was any misconduct in the deliberation process" or that "she refused to deliberate."  Because Horton appeals only Judge Birnstein's denial of the mistrial motion, Judge Burghardt's order is not relevant to our analysis.

Document received by the CA Supreme Court.

No. 9.  Horton claims there was " 'good cause' " under section 1098 to dismiss Juror No. 9 because she "refused to deliberate."

We review the denial of a mistrial motion under the deferential abuse of discretion standard.  (*People v. Ramirez* (2006) 39 Cal.4th 398, 462; *People v. Silva* (2001) 25 Cal.4th 345, 372.)  " 'A trial court should grant a mistrial only when a party's chances of receiving a fair trial have been irreparably damaged' " (*Ramirez*, at p. 462), i.e., where " 'the court is apprised of prejudice that it judges incurable by admonition or instruction' " (*People v. Suarez* (2020) 10 Cal.5th 116, 148).

The trial court did not abuse its discretion in finding there was no juror misconduct under section 1089, and thus the court did not abuse its discretion in denying the motion for a mistrial.  (See *People v. Harris* (2013) 57 Cal.4th 804, 857 [finding no abuse of discretion in denying defendant's motion for mistrial in the absence of proof of prejudicial juror misconduct].)

A.    *Section 1089*

"[S]ection 1089 ' "authorizes the trial court to discharge a juror at any time before or after the final submission of the case to the jury if, upon good cause, the juror is 'found to be unable to perform his or her duty.' " ' "  (*People v. Rangel* (2016) 62 Cal.4th 1192, 1211; see § 1089.)  "The most common application of [section 1089] permits the removal of a juror who becomes physically or emotionally unable to continue to serve as a juror due to illness or other circumstances."  (*People v. Cleveland* (2001) 25 Cal.4th 466, 485; see *People v. Jones* (2020) 50 Cal.App.5th 694, 700 (*Jones*) ["Dismissal may be appropriate [under section 1089] when a juror is emotionally unable to continue" with deliberations].)  Section 1089 has also "been applied to permit the removal of a juror who refuses to deliberate,

Document received by the CA Supreme Court.

on the theory that such a juror is 'unable to perform his duty' within the meaning of [] section 1089." (*Cleveland*, at p. 475; see *People v. Alexander* (2010) 49 Cal.4th 846, 926 ["The court properly may dismiss a juror based on the juror's "unwillingness to engage in the deliberative process."].)

" 'The trial court's authority to discharge a juror includes the authority to conduct an appropriate investigation concerning whether there is good cause to do so.' " (*People v. Alexander, supra*, 49 Cal.4th at p. 926; see *People v. Beeler* (1995) 9 Cal.4th 953, 989, overruled on other grounds in *People v. Pearson* (2013) 56 Cal.4th 393, 462 ["The court's discretion in deciding whether to discharge a juror encompasses the discretion to decide what specific procedures to employ including whether to conduct a hearing or detailed inquiry."].) " 'Great caution is required when deciding to excuse a sitting juror.' " (*Jones, supra*, 50 Cal.App.5th at pp. 700-701, quoting *People v. Allen and Johnson* (2011) 53 Cal.4th 60, 71.) "[T]o ensure the sanctity and secrecy of the deliberative process, a trial court's inquiry into grounds for discharging a deliberating juror should be as limited as possible, and should cease once the court is satisfied that the juror in question 'is participating in deliberations and has not expressed an intention to disregard the court's instructions or otherwise committed misconduct, and that no other proper ground for discharge exists.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 53.) A court may not resolve ambiguity as to a juror's state of mind by "presuming the worst" of a juror. (*Jones*, at p. 702; accord, *Shanks v. Department of Transportation* (2017) 9 Cal.App.5th 543, 553.)

" 'Before an appellate court will find error in failing to excuse a seated juror, the juror's inability to perform a juror's

Document received by the CA Supreme Court.

functions must be shown by the record to be a "demonstrable reality." The court . . . will uphold the trial court's exercise of discretion on whether a seated juror should be discharged for good cause under section 1089 if supported by substantial evidence.' " (*People v. Jablonski* (2006) 37 Cal.4th 774, 807; see *People v. Rangel, supra,* 62 Cal.4th at p. 1211 [" ' "[W]hen a trial court's denial of a motion to discharge a juror is supported by substantial evidence, it will be upheld." ' "].)

B.    *The Trial Court Did Not Err in Denying Horton's Motion for a Mistrial*

The record does not show a "demonstrable reality" that Juror No. 9 was unable or unwilling to perform her duties. (*People v. Jablonski, supra,* 37 Cal.4th at p. 807.) Judge Birnstein conducted a sufficient investigation into possible juror misconduct, examining court staff, bailiffs, and attorneys who interacted with Juror No. 9 or overheard her interactions with others. The investigation revealed that during the evidentiary portion of the trial and during breaks between closing arguments, Juror No. 9 asked the judicial assistant and bailiff several questions about trial procedures, such as " 'When are we going to finish?,' " and " 'Is it normal for jurors to be dropping out during the trial?' " Juror No. 9 also professed to have an emergency with her dog that caused her to be late on the day of closing arguments. The court appropriately determined none of that conduct constituted misconduct.

The investigation also showed that an hour after deliberations began, Juror No. 9 left the jury room and sat in the hallway. She said, " 'I just threw up,' " " 'I just don't want to be here anymore,' " and " 'I want to go home.' " At that point, Judge Burghardt excused all the jurors for the remainder of the

Document received by the CA Supreme Court.

afternoon.  The next morning, Juror No. 9 returned to court and
deliberated for several hours before reaching a verdict.  When
questioned, the jurors agreed that deliberations paused when
Juror No. 9 left the jury room, and they followed the law at all
times.  Judge Birnstein did not abuse her discretion in finding no
misconduct as a result of Juror No. 9 leaving the room.[7]

"By statute, illness is cause to dismiss a juror." (*People v.
Duff* (2014) 58 Cal.4th 527, 560.)  However, "[w]hether a juror's
illness can best be accommodated by a continuance or
replacement with an alternate is a matter committed to the trial
court's discretion." (*Id.* at p. 561.)  The court's decision to
continue the case to the next morning was not an abuse of
discretion.  Juror No. 9 became sick when the evidentiary portion
of the trial ended, and the jury started deliberating.  Because the
presentation of evidence had concluded, a brief continuance to the

---

[7]    Although Horton's brief contains a heading stating, "The
judgment should be reversed for juror misconduct because Juror
No. 9 refused to deliberate *and deliberations were undertaken in
her absence*" (italics added; capitalization omitted), Horton
provides no evidence or argument that deliberations took place
when Juror No. 9 was outside the jury room.  He has forfeited the
contention on appeal. (See *Multani v. Witkin & Neal* (2013)
215 Cal.App.4th 1428, 1458 [" 'Mere suggestions of error without
supporting argument or authority . . . do not properly present
grounds for appellate review.' "]; accord, *In re S.C.* (2006)
138 Cal.App.4th 396, 408.)  Horton also suggests in passing that
Juror No. 9's questions and repeated statements that she wanted
"to go home" after becoming ill suggest she "may have encouraged
the jury to convict so she could . . . 'go home.' "  This speculative
argument lacks any factual or legal support and is likewise
forfeited. (See *In re S.C.*, at p. 408.)

Document received by the CA Supreme Court.

next morning did not impair either party, and Horton does not contend otherwise. (Cf. *ibid.* [court did not abuse discretion in excusing ill juror who would likely be out for two days because a two-day continuance "would result in a lengthy gap between presentation of evidence and closing arguments on one or both sides, a gap that might impair either party's presentations or impact juror deliberations"].) More importantly, the record shows that the brief continuance resolved any doubt about Juror No. 9's capabilities as a juror. Juror No. 9 returned the next day and deliberated without any further complications.

Horton argues the record shows as a " 'demonstrable reality' " that Juror No. 9 was "refusing to deliberate" when she sat in the hallway and said she did not want to be there anymore. We reject the argument. "Even the most diligent juror may reach the end of his attention span at some point during a trial." (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 418, overruled on other grounds in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.) In *People v. Henderson* (2022) 78 Cal.App.5th 530, the appellate court held the trial court erred by " 'presuming the worst' " of a juror and discharging him under section 1089 when "[a]t best, the evidence established that [the juror] was looking forward to his jury duty being over, a sentiment that does not strike us unusual for jurors in a lengthy trial, especially when trying to juggle work and perform their civic duty at the same time." (*Henderson*, at pp. 562-563.) The court held that "[s]uch a feeling did not signal that the juror could not perform his duty." (*Id.* at p. 563.)

*Jones, supra,* 50 Cal.App.5th 694 is also instructive. In *Jones*, after the jury began deliberating, Juror No. 10 left the jury room and told the courtroom clerk that another juror revealed

Document received by the CA Supreme Court.

extraneous information during deliberations about the
defendant's prior criminal history. (*Id.* at p. 689.) Juror No. 10
felt " 'extremely upset' " and " 'somewhat coerced' " by the event
because the other juror revealed the information after Juror
No. 10 had expressed reservations about the charges. (*Id.* at
p. 701.) The trial court asked Juror No. 10 if " 'it would be very
difficult for you to continue in your deliberations,' " to which
Juror No. 10 replied, "Yes." (*Ibid.*) Finding that Juror No. 10
had expressed " 'an inability to continue deliberating,' " the trial
court dismissed Juror No. 10. (*Id.* at p. 699.)

 Our colleagues in *Jones* concluded the record did not show,
as a demonstrable reality, that Juror No. 10 was unwilling to
continue deliberating. (*Jones, supra,* 50 Cal.App.5th at pp. 704-
705.) "Juror No. 10 never requested to be discharged, nor did she
ever say she was unwilling or unable to continue deliberating."
(*Id.* at p. 701.) Also, the trial court "never asked [Juror No. 10]
directly whether she could continue." (*Id.* at p. 702.) Rather, the
court asked her if it would be " 'very difficult' " for her to
continue, which invited an "equivocal" response—"Juror No. 10
could have meant she was incapable of continuing to deliberate,
or she could have meant she was capable of continuing to
deliberate but it would be hard to do so." (*Ibid.*) When a juror's
answer is ambivalent, the court is " 'not entitled to . . . presum[e]
the worst.' " (*Ibid.*)

 Like the juror in *Jones,* here, Juror No. 9 never requested
to be discharged, nor did she ever say she was unwilling to
continue deliberating altogether. Rather, she expressed not
wanting to be there and wanting to go home at that point in time.
She had deliberated without incident for an hour before she took
ill. And even if Juror No. 9's conduct in the hallway could have

been interpreted as an expression of her refusal to continue to deliberate, that possibility was quickly dispelled the next morning when Juror No. 9 returned to court and resumed deliberating.  (See *People v. Goldberg* (1984) 161 Cal.App.3d 170, 191-192 [no abuse of discretion in keeping juror where juror became extremely upset and asked to be excused, but after discussing the issue with the judge, juror agreed to continue deliberating].)

In sum, the record does not indicate that Juror No. 9 refused to deliberate or was unable to perform her duty as a juror.  The trial court did not abuse its discretion in finding there was "nothing . . . wrong whatsoever" with the jury deliberations. Because there was no juror misconduct, it follows that the record is absent of any "incurably prejudicial" incident that would justify granting a mistrial motion.  (*People v. Suarez*, *supra*, 10 Cal.5th at p. 148.)  Thus, we conclude the trial court did not abuse of discretion in denying the mistrial motion.[8]

## DISPOSITION

The judgment is affirmed.

STONE, J.

We concur:

MARTINEZ, P. J.

SEGAL, J.

---

[8]    To the extent Horton contends the court's failure to discharge Juror No. 9 violated his state and federal constitutional rights, we reject the claim.  The "conclusion that the trial court did not violate [section 1089] necessarily disposes of [a defendant's] constitutional claims."  (*People v. Leonard* (2007) 40 Cal.4th 1370, 1410.)

Document received by the CA Supreme Court.

## PROOF OF SERVICE

I am a citizen of the United States, over the age of 18 years, employed in the County of Los Angeles, and not a party to the within action; my business address is 520 S. Grand Avenue, 4th Floor, Los Angeles, California 90071. I am employed by a member of the bar of this court.

On November 25, 2042, I served the within

## PETITION FOR REVIEW

in said action, by emailing and truefiling through TrueFiling a true copy thereof to:

Office of the Attorney General
docketinglaawt@doj.ca.gov,

Office of the Los Angeles County District Attorney
truefiling@da.lacounty.gov,

and by placing a true copy thereof enclosed in a sealed envelope, addressed as follows, and deposited the same in the United States Mail at Los Angeles, California:

Los Angeles County Superior Court
Honorable Joseph Burghardt
Airport Courthouse
11701 S. La Cienga
Los Angeles, CA 90045

Lamont E. Horton, BV7277
California State Prison -
Los Angeles County
P.O. Box 8457
Lancaster, CA 93539-8457

I declare under penalty of perjury that the foregoing is true and correct.

Executed November 24, 2024, at Los Angeles, California.

/s/ Breanne Valdez-Sosa
BREANNE VALDEZ-SOSA

Document received by the CA Supreme Court.

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA,** Plaintiff and Respondent, v. **LAMONT EDWARD HORTON** Defendant and Appellant. | No. _____ Case No. B332643 Superior Court No. SA 106976 |

APPEAL FROM THE SUPERIOR COURT
FOR THE COUNTY OF LOS ANGELES
THE HONORABLE JOSEPH BUGHARDT PRESIDING

**PETITION FOR REVIEW**

RICHARD LENNON
Executive Director

*SYDNEY BANACH
Staff Attorney SBN 347220

CALIFORNIA APPELLATE
PROJECT
520 S. Grand Avenue, 4th Floor
Los Angeles, CA 90071
Telephone: (213) 243-0300
Fax: (213) 243-0303
Email: Sydney@lacap.com

Attorneys for Appellant/Petitioner

Document received by the CA Supreme Court.

## TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PETITION FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

QUESTION PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATEMENT OF CASE AND FACTS . . . . . . . . . . . . . . . . . . . 8

NECESSITY FOR REVIEW AND ARGUMENT . . . . . . . . . . . . . 9

    I.    PETITIONER'S SIXTH AMENDMENT RIGHTS
         WERE VIOLATED BY THE COURT'S DENIAL
         OF PETITIONER'S MOTION FOR A MISTRIAL
         AFTER A JUROR COMMITTED MISCONDUCT
         BY REFUSING TO DELIBERATE . . . . . . . . . . . . . . 9

        A.    Relevant Legal Framework . . . . . . . . . . . . . . . 9

        B.    Relevant Facts and Findings Below . . . . . . . . 11

        C.    The Court Erred in Denying Petitioner's
            Mistrial Motion for Juror Misconduct . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

WORD COUNT CERTIFICATION . . . . . . . . . . . . . . . . . . . . . 16

APPENDIX A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Document received by the CA Supreme Court.

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Irvin v. Dowd* (1961)
    366 U.S. 717 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Stansbury v. California* (1994)
    511 U.S. 318 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATE CASES

*In re Hitchings* (1993)
    6 Cal.4th 97 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Armstrong* (2016)
    1 Cal.5th 432 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Ayala* (2000)
    23 Cal.4th 225 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Bolden* (2002)
    29 Cal.4th 515 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Cleveland* (2001)
    25 Cal.4th 466 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Diaz* (1984)
    152 Cal.App.3d 926 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Guzman* (1977)
    66 Cal.App.3d 549 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Landry* (2016)
    2 Cal.5th 52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Marshall* (1996)
    13 Cal. 4th 799 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Document received by the CA Supreme Court.

*People v. Mil* (2012)
    53 Cal.4th 400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Salinas-Jacobo* (2019)
    33 Cal.App.5th 760 . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Stansbury* (1993)
    4 Cal.4th 1017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Warren* (1986)
    176 Cal.App.3d 324 . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*People v. Watson* (2008)
    43 Cal.4th 652 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Weatherton* (2014)
    59 Cal.4th 589 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Wilson* (2008)
    43 Cal.4th 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Woodbury* (1970)
    10 Cal.App.3d 695 . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## FEDERAL CONSTITUTION

**Amendments:**

    VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATE CONSTITUTION

**Article:**

    I, § 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Document received by the CA Supreme Court.

## STATE STATUTES

Penal Code section:

1089. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## CALIFORNIA RULES OF COURT

Rule:

8.500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

Document received by the CA Supreme Court.

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA,**<br>       Plaintiff and Respondent,<br><br>v.<br><br>**LAMONT EDWARD HORTON,**<br>       Defendant and Appellant. | No.<br>_____<br><br>Case No. B332643<br><br>Superior Court No.<br>SA106976 |

## PETITION FOR REVIEW

TO:   THE HONORABLE PATRICIA GUERRERO, CHIEF JUSTICE AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

Appellant/petitioner Lamont Horton respectfully requests this Court, pursuant to California Rules of Court, rule 8.500(a)(1), to grant review in the above entitled case following the October 15, 2024, unpublished opinion of the Court of Appeal, Second Appellate District, Division Seven, affirming petitioner's conviction for first degree murder. No rehearing petition was filed. A copy of the opinion is attached hereto as Appendix A.

Document received by the CA Supreme Court.

## QUESTION PRESENTED

1. Whether a defendant's Sixth and Fourteenth Amendment
rights are violated when a trial court denies a defendant's motion
for a mistrial for juror's misconduct after a juror's conduct,
including asking if she was being held hostage after demanding to
be allowed to go home, suggested that she was incapable of
deliberating?

Document received by the CA Supreme Court.

## STATEMENT OF CASE AND FACTS

For the purposes of this petition only, petitioner adopts the statement of case and facts as set forth in the opinion from the Court of Appeal. (Appendix A, at pp. 2-8.)

Document received by the CA Supreme Court.

## NECESSITY FOR REVIEW AND ARGUMENT

In petitioner's case, evidence demonstrated that a juror refused to deliberate. She called in sick, complained she was being held hostage, asked if she was going to jail, repeatedly requested to go home, and at one point, left the deliberation room and refused to return until the following day. Yet, while the trial court acknowledged her as problematic, it refused to dismiss her and denied petitioner's motion for a mistrial. The Court of Appeal found no abuse of discretion. Review should be granted to address this issue and provide guidance to lower courts tasked with evaluating whether a defendant's Sixth and Fourteenth Amendment rights to a fair and impartial jury are violated when a juror refuses to deliberate or is incapable of deliberating. Here, petitioner's rights were violated.

## I.     PETITIONER'S SIXTH AMENDMENT RIGHTS WERE VIOLATED BY THE COURT'S DENIAL OF PETITIONER'S MOTION FOR A MISTRIAL AFTER A JUROR COMMITTED MISCONDUCT BY REFUSING TO DELIBERATE

### A.     Relevant Legal Framework

The right to a trial by a fair and impartial jury is guaranteed by both the California Constitution and the United States Constitution. ((U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 16; *Irvin v. Dowd* (1961) 366 U.S. 717, 722; see also *In re Hitchings* (1993) 6 Cal.4th 97, 110.) The Sixth Amendment right to an impartial jury means, in California, that

9

Document received by the CA Supreme Court.

reversal is required where a deliberating juror has committed
misconduct, for example, by prejudging the case (*People v.
Weatherton* (2014) 59 Cal.4th 589, 598) or refusing to deliberate
(*People v. Cleveland* (2001) 25 Cal.4th 466, 485). As stated in
*People v. Watson* (2008) 43 Cal.4th 652, "A juror's refusal to
deliberate constitutes proper grounds for removal." (*Id.*, at p. 696,
citing *People v. Cleveland* (2001) 25 Cal.4th 466, 485.)

    Under California law, a juror can be removed "at any time"
if he or she becomes ill, which qualifies as "good cause" to find he
or she is "unable to perform his or her duty." (§ 1089; *People v.
Wilson* (2008) 43 Cal.4th 1, 25, quoting § 1089; see also *People v.
Landry* (2016) 2 Cal.5th 52, 89 [finding no abuse of discretion in
excusing a sick juror rather than granting a three-day
continuance].) "Good cause" for the discharge of an impaneled
juror also exists where the juror is "emotionally upset and
distraught, and stated that she 'could not decide the case on the
evidence and the law.'" (*People v. Warren* (1986) 176 Cal.App.3d
324, 327, citations omitted.) There must be a "demonstrable
reality" that he or she was unable to perform as a juror. (*People v.
Marshall* (1996) 13 Cal. 4th 799, 843.)

    The purpose of a mistrial is to terminate a trial which has
or will deprive one or both of the parties of a fair trial. This Court
has recognized that such motions should be granted when "a
party's chances of receiving a fair trial have been irreparably
damaged." (*People v. Ayala* (2000) 23 Cal.4th 225, 282; see also
*People v. Bolden* (2002) 29 Cal.4th 515, 555.) Whether a

*Document received by the CA Supreme Court.*

particular incident is incurable or prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. (*People v. Stansbury* (1993) 4 Cal.4th 1017, 1060, reversed on another issue in *Stansbury v. California* (1994) 511 U.S. 318; *People v. Woodbury* (1970) 10 Cal.App.3d 695, 708.) "[J]ury misconduct challenges the fundamental rights to an unprejudiced jury and the fairness of the trial proceedings" (*People v. Diaz* (1984) 152 Cal.App.3d 926, 933). Thus, if not deemed structural error, the denial of counsel's mistrial motion, based on juror misconduct, violates a defendant's Due Process right to "a fair trial by an unbiased jury." (*People v. Salinas-Jacobo* (2019) 33 Cal.App.5th 760, 762.)

## B.     Relevant Facts and Findings Below

After all the evidence was presented at the trial, Juror No. 9 called in and reported her dog was sick, and she would be late. (4RT 810.) After she arrived, she asked the bailiff "when the trial is going to begin," and "is it normal for jurors to be dropping out during a trial?" (4RT 887, 888, 890.) An hour after deliberations began, the bailiff found Juror No. 9 outside of the jury deliberation room. (4RT 876.) The juror said she "threw up" and repeatedly said she didn't want to be there, and asked if she would go to jail and if she could go home. (4RT 877-879.) After the bailiff told her she could not go home because she did not have a medical condition or emergency, she said "Am I being held hostage right now? I want to go home, and I don't want to do this." (4RT 880.) The court allowed her to go home and discharged

11

Document received by the CA Supreme Court.

all the jurors for the day. (4RT 881-885.) The next day, Juror No. 9 returned, and a verdict was rendered in the afternoon. (4RT 886-887; 1CT 168.)

During this time, the trial court acknowledged there were "serious issues" presented by the lack of alternates, because "one of the jurors is very very problematic and does not want to be around." (4RT 870, 876, 868.) The trial court stated, "it was pretty clear that Juror No. 9 did not want to be there, did not want to be a juror." (4RT 923, 924.) Defense counsel moved for mistrial on the grounds of juror misconduct, stating, it appeared the other jurors deliberated in Juror No. 9's absence and it appeared Juror No. 9 was not deliberating or concentrating on the issues, which "taints the entire process and the sanctity" of the trial and violated petitioner's Due Process rights because "this is a very serious case." (4RT 896, 897.) After the court denied the mistrial motion and took the verdict, the judge asked the jurors, together, if there had been any deliberations without all 12 jurors present, which each denied. (4RT 898-908.)

The Court of Appeal found that the trial court did not abuse its discretion in denying the motion for a mistrial because the record did not show a "demonstrable reality" that Juror No. 9 was unable to perform her duties as juror. (Appendix A, at p. 9.) The Court held that the juror's questions that demonstrated her impatience did not constitute misconduct. (Appendix A, at p. 11.) The Court of Appeal found that even though Juror No. 9 left the deliberation room at some points, deliberations stopped every time she left the room. (Appendix A, at p. 12.) The court

Document received by the CA Supreme Court.

12

emphasized the juror never requested to be discharged, nor did
she outright assert that she was unwilling to deliberate, and she
returned the morning after she refused to reenter the deliberation
room. (Appendix A, at pp. 14-15.) Petitioner asserts that this
conclusion involves an unreasonable determination of the facts
and unreasonable application of the law.

### C. The Court Erred in Denying Petitioner's Mistrial Motion for Juror Misconduct

Petitioner's constitutional right to a fair and impartial jury
was violated because Juror No. 9 refused to deliberate or was
incapable of deliberating. The juror's repeated assertions that she
did not want to be present and her departure from the
deliberation room all evinced that the juror was unwilling to
deliberate. The record unequivocally shows that Juror No. 9's,
failure to deliberate was "a demonstrable reality," and the trial
court's conclusion was not manifestly supported by the evidence.
(*People v. Armstrong* (2016) 1 Cal.5th 432. 453; *People v. Warren*,
*supra*, 176 Cal.App.3d 324, 327 [failure to deliberate evinced by
juror who "emotionally upset and distraught, and stated that she
'could not decide the case on the evidence and the law'"].)

Moreover, the fact that Juror No. 9 called in late the day
before deliberations were to commence, asked "when will the case
begin" after both sides rested, and repeatedly said she was being
"held hostage" and wanted "to go home," 878, 879, 880) suggested
she encouraged the jury to convict so she could in fact "go home."
(4RT 878, 879, 880.) The record demonstrates her misconduct

Document received by the CA Supreme Court.

13

"could have affected the integrity of further deliberations."
(*People v. Guzman* (1977) 66 Cal.App.3d 549, 561-559.)

The Court of Appeal failed to consider the impact of the juror's questions and refusal to deliberate on the other jurors. Moreover, the Court of Appeal did not consider the trial court's consideration of the lack of alternate jurors. Had the court discharged Juror No. 9, the case would have to be dismissed because there was no juror to replace her – a fact that gave the court "great concern" (8RT 870). This fact impelled the court to keep Juror No. 9 on the jury, which impacted "the sanctity of the deliberative process." (*People v. Mil* (2012) 53 Cal.4th 400, 410.)

Petitioner submits that trial court erred in denying petitioner's motion for a mistrial for juror misconduct, and petitioner was denied his right to a fair and impartial jury. Review should be granted.

Document received by the CA Supreme Court.

14

## CONCLUSION

Petitioner respectfully submits that for the foregoing reasons, review should be granted pursuant to Rule 8.500 of the California Rules of Court.

Dated: November 25, 2024    Respectfully submitted,

CALIFORNIA APPELLATE
PROJECT

By:
/s/ Sydney Banach
SYDNEY BANACH

Attorney for Appellant/Petitioner

Document received by the CA Supreme Court.

15

## WORD COUNT CERTIFICATION
### *People v. Lamont Edward Horton*

I certify that this document was prepared on a computer using Corel Wordperfect, and that, according to that program, this document contains <u>1,702</u> words.

<u>/s/ Sydney Banach</u>
SYDNEY BANACH

Document received by the CA Supreme Court.

16

APPENDIX A

Document received by the CA Supreme Court.

SUPREME COURT
FILED

DEC 3 1 2024

Jorge Navarrete Clerk

Deputy

Court of Appeal, Second Appellate District, Division Seven - No. B332643

S288035

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

---

THE PEOPLE, Plaintiff and Respondent,

v.

LAMONT EDWARD HORTON, Defendant and Appellant.

---

The petition for review is denied.

GUERRERO
*Chief Justice*



LAMONT → ARD HORTON
#BV7277
CALIFORNIA STATE PRISON-
LOS ANGELES COUNTY
P.O. BOX 8457
#LANCASTER, CA. 93539-8457

☒ NEW

CDCR STATE PRISON
GENERATED MAIL

CLERK OF THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
UNITED STATES COURTHOUSE
ATTN: INTAKE / DOCKET SECTION
255 EAST TEMPLE STREET
SUITE TS-134
LOS ANGELES, CALIFORNIA 90012

* LEGAL MAIL *

